CHRISTINA PETERSON v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

June 19, 1903.

Nos. 13,513—(96).

**Personal Injury—Evidence.**

In an action for damages for personal injuries alleged to have been caused by the negligence of defendant, the evidence is examined and *held* sufficient to sustain the verdict for plaintiff.

**Order Appealable.**

An order directing judgment notwithstanding a verdict, based upon an alternative motion for judgment or a new trial, is appealable. St. Anthony Falls Bank v. Graham, 67 Minn. 318, followed.

Appeal by plaintiff from an order of the district court for Hennepin county, Elliott, J., granting a motion for judgment in favor of defendant notwithstanding the verdict, after a trial and verdict in favor of plaintiff for $2,000. Reversed.

*John Lind* and *A. Ueland,* for appellant.
*Koon, Whelan & Bennett,* for respondent.

[1] Reported in 95 N. W. 751.

The plaintiff at the time of the accident had full knowledge of the location of the tracks and the manner of operating cars thereon. She had complete use of her faculties of sight and hearing at the time of the accident. Before the accident there was nothing to indicate that she was decrepit. The day was bright and it was broad daylight. Riverside avenue is a wide straight street and there was no obstruction to prevent plaintiff seeing the car which struck her. She went into the driveway of the street by stepping from the curb to a point over fifty feet north of the street crossing. Her attention was not in any way distracted from hearing and seeing this car.

BROWN, J.

Action to recover for personal injuries alleged to have been caused by the negligence of defendant. Plaintiff had a verdict in the court below, which was set aside on motion, and judgment ordered for defendant notwithstanding the same, on the ground that plaintiff was guilty of contributory negligence. Plaintiff appealed.

1. The order appealed from is based upon an alternative motion for judgment notwithstanding the verdict, or a new trial, and the point is made by respondent that it is not appealable. Such an order was held appealable in St. Anthony Falls Bank v. Graham, 67 Minn. 318, 69 N. W. 1077, and we adhere to that decision. An order based on a motion for judgment which is not blended with the motion for a new trial, in case judgment is not granted, is not appealable. Oelschlegel v. Chicago G. W. Ry. Co., 71 Minn. 50, 73 N. W. 631; Sanderson v. Northern Pac. Ry. Co., 88 Minn. 162, 92 N. W. 542. But when the order is based upon the blended motion it is appealable.

2. The facts in the case are as follows: Plaintiff was injured by being struck by a street car operated by defendant. The accident occurred at the intersection of Riverside avenue, Fifth street, and Twentieth avenue south, in Minneapolis. There is a double track on Riverside avenue extending from the center of Minneapolis to Minnehaha. At the time in question, and as plaintiff was about to cross the track on that avenue, a car was approaching from Minneapolis, going in the direction of Minnehaha, and one was coming from the other direction, going into the city. There is a grade on the avenue at this point, and the car coming from the city was going up, and the

one going into the city down, the same. The motorman of the car which struck plaintiff testified that his car was "coasting" down the grade from a block south to the point where the accident occurred. By "coasting" he meant that the current of electricity was turned off, and no power applied to the car other than the force of gravity on the down grade. Plaintiff came from Twentieth avenue, a street running across Riverside avenue at an angle of about forty-five degrees, and as she came to the latter turned to the right, passed down the street some fifty feet, then turned to cross the street car track in a slightly diagonal course. As she turned down Riverside avenue she was facing the car going to Minnehaha, and the car which struck her, coming from the opposite direction, was behind her. As stated, the car going to Minnehaha was on an up grade, and the evidence tends to show that a boy was riding beside it on a bicycle, apparently racing with it, and that the motorman was sounding his gong, presumably as a warning to the boy, which undoubtedly attracted the attention of plaintiff, for she did not look behind her, or to the left, or notice the car approaching from the opposite direction. She stepped upon the track just about as the car going to Minnehaha was passing, and was immediately struck by the one approaching from the opposite direction. Had she turned her head to the left and looked, she would undoubtedly have noticed the car, and could have stepped aside and avoided the accident. Her injuries were somewhat severe, and the jury awarded her a verdict of $2,000.

The important question to be determined in this court is whether the trial court was right in its conclusion that the evidence is conclusive of plaintiff's contributory negligence. We have but little doubt of the sufficiency of the evidence to take the case to the jury on the issue of defendant's negligence, and, unless the evidence is conclusive of plaintiff's contributory negligence, the verdict should stand.

It is claimed by plaintiff that the motorman permitted his car to run at an excessive rate of speed; that he failed to have the car under proper control; and that he did not sound his gong or give other warning of its approach, by reason of which the accident and injury to plaintiff occurred; that if the car had been under reasonable control, as it might and should have been at this particular place, or due warning of its approach given, no accident would have happened. The car

which injured plaintiff was on a down grade, as we have already noted, going at a rapid rate of speed, seven or eight miles an hour, "coasting," as the motorman termed it, approaching a crossing at which three streets intersect—much frequented by people on foot—and was not kept under control by him. His own testimony is to the effect that he did not have control of the car as it approached the crossing. He may have had control of the car brake, but not of the car itself. No persons were there to take passage, and he deemed it unnecessary to have his car under immediate control, intending to pass the crossing without stopping. While he testified that he sounded his gong as a warning to plaintiff, other evidence in the case is such as to justify the jury in finding to the contrary. Two cars were approaching at about the same time, and the witnesses relied upon by plaintiff to show that the gong on this particular car was not sounded testified that they did not hear it, but that they did hear the other car sound its gong. They heard the one, but not the other. This tends to show that the attention of the witnesses was directed to the matter at the time, and their evidence is not wholly of a negative character,

It was held in Watson v. Minneapolis St. Ry. Co., 53 Minn. 551, 55 N. W. 742, that it is the duty of a street railway company to use reasonable care to see that it does not injure persons passing over its tracks, to give warning of the approach of cars when persons are seen about to cross the track, and to keep its cars under reasonable control at such times. The rule of that case has always been applied by this court, and is the law by which we are guided in the case at bar. It was followed and applied in Gray v. St. Paul City Ry. Co., 87 Minn. 280, 91 N. W. 1106, and in numerous other cases. Within it the evidence presented a question of fact as to defendant's negligence, and the verdict is not so clearly against it as to warrant interference by this court. It was apparently approved by the trial court, for the order for judgment was based upon the claim that plaintiff's contributory negligence is conclusively shown by the evidence.

3. We come then directly to the main controversy in the case, namely, the alleged contributory negligence of plaintiff. It is firmly settled by numerous decisions of this court that the act of a pedestrian in crossing a street car track at a street crossing in a populous part of the city, without looking and listening for an approaching car, is

not, as a matter of law, an act of negligence. Whether the failure to look and listen at such place be negligence in any particular case is ordinarily a question of fact to be determined by the jury. Shea v. St. Paul City Ry. Co., 50 Minn. 395, 52 N. W. 902. A pedestrian is required, however, to exercise reasonable care and prudence to avoid accidents of the kind, and his failure to do so bars a recovery.

The learned trial judge directed judgment for defendant in reliance upon Russell v. Minneapolis St. Ry. Co., 83 Minn. 304, 86 N. W. 346; and it is contended in this court that, as respects substantial facts, the cases are not distinguishable. In this we are unable to concur. Plaintiff in the case at bar was in her seventieth year, possessing such faculties of sight and hearing as persons of that age usually possess. She failed to look for the car in question, it is true, or for a car likely to approach from that direction. But this is not conclusive against her; she was crossing the track at or near a street crossing, and her attention was attracted by a car approaching from the opposite direction of the one that struck her, and whether her failure to look for the latter was excused was a question for the jury to determine. The car approaching from the direction in which she was partly going was making considerable noise, a boy riding a bicycle was racing with it, and the motorman in charge thereof was sounding his gong; that all this attracted her attention seems a fair inference from the facts disclosed. At least, they presented a question for the jury. Reasonable minds guided by a sense of fairness might reach different conclusions therefrom. Plaintiff's testimony on this particular phase of the case is not clear or definite. It is claimed that her mind was affected by the accident, rendering her memory uncertain. She had no distinct recollection at the time of the trial whether her attention was attracted by the car approaching from the city or not; but other witnesses testified to the fact that the gong was sounded, evidently as a warning to the boy riding the bicycle, and the boy, car, and gong were such as would naturally attract the attention of any person about to cross the street car track.

These distracting circumstances clearly distinguish this from the Russell case. In the latter there was nothing to divert the attention of plaintiff. She was a woman about fifty-nine years of age, in possession of her mental faculties, sight, and hearing, and in full control

of her movements. She was crossing the track diagonally, and in the direction in which the car which struck her was approaching. She testified that she did not know when she started to cross the street that cars were operated thereon; she also testified that she stepped upon the street car track, and did not know that fact until the car struck her. The court held that she was so utterly unmindful of her surroundings and whereabouts as to charge her conclusively with contributory negligence. The slightest glance of the eye would have informed her of the approach of the car, yet she was not aware of the fact that she was upon the street car track. In the case at bar plaintiff's attention was attracted by the car approaching from the other direction, at least the evidence was such as to justify the jury in so finding, and this fact clearly distinguishes it from the Russell case, for no such circumstance was there presented.

Our conclusions are that the question of plaintiff's contributory negligence was properly submitted to the jury, and that the verdict should be sustained.

Order reversed.

COLLINS, J. (dissenting.)

I dissent. I cannot understand the testimony as it is stated to be in the main opinion. I also believe that in this case there has been a clear departure from the well-settled doctrine of this court upon the subject of contributory negligence, and that, in effect, this doctrine has been wholly discarded and set aside. For these reasons I am compelled to state my views quite fully.

1. It is asserted in the main opinion that there is little doubt of the sufficiency of the testimony to take the case to the jury on the question of the motorman's negligence. I fail to see wherein it was shown that the motorman was negligent in the management of his car, either as to speed, or signals, or control. There was no evidence from which it could even be inferred that the speed was excessive or dangerous. Upon the contrary, it appears, in my judgment, that the rate of speed was unusually moderate and safe. The car, with a trailer, was running northwest. Four witnesses, only, testified in behalf of the plaintiff as to its speed. Hanson, who was standing on the porch of his house about fifty feet northwest from the place of accident, testified that

the car was running "just as common between the crossings of the street." Mrs. Larson, who was sitting on a doorstep about the same distance away, stated that the car was running at "medium speed." Peterson, who was standing on the step of the trailer, testified that it was running "at a fair rate of speed." Damm, who stood a block away, northwest about three hundred feet, stated that the car "had a pretty good speed," but he did not see the car at all until the instant plaintiff was struck. There was no further testimony as to speed offered by plaintiff. Three witnesses for the defendant, the motorman, the conductor, and a newspaper reporter who happened to be in the vicinity, testified to substantially the same thing. In the main opinion the rate of speed is fixed at seven or eight miles an hour, and this is characterized as a "rapid" rate. I do not so regard it, and it is a well-known fact that street cars are habitually run between and over crossings much faster than this, and are by ordinance allowed and justified in so doing. If they did not so run, rapid transit would be of no value.

At the last legislative session the maximum speed of the automobile was fixed at eight miles an hour, and they are propelled at random, to a great extent, while the street car runs upon a fixed track, and is less dangerous at the same speed. As a matter of fact, a good horse will travel seven or eight miles an hour and keep it up for several hours, the same rate at which this car was running. Unless it is to be held as a matter of law that running a car by force of gravity—"coasting," as it is called—is, in itself, unlawful, I do not see how it can be maintained that this rate was rapid, excessive, dangerous, or negligent. There was no testimony that coasting is unusual or unsafe. It would seem to the nonexpert that the dangerous and unusual manner would be to keep on the current while running down hill.

Again it is argued that the motorman did not have his car under proper control. He stopped for passengers one block away. When starting up from this point he applied sufficient electric current to give the proper motion to the car; the current was then shut off, and the slack taken out of the hand brake by "winding up" as the car started down grade. In other words, the motorman controlled the brake so that it could be speedily and stoutly applied to the car, if necessary, and he kept taking up the slack until just before the accident, when,

discovering the plaintiff in peril, he reversed with the electric current. He admitted that he did not have the car under such control as to enable him to stop it within twenty-five feet, but I am not aware of any rule of law which compels a motorman approaching such a crossing as this was, a common crossing more than a mile from the center of the city, when there are no persons to get on or off, to have control of his car sufficiently to stop it suddenly, in anticipation that a person may walk deliberately into peril.

Winchell v. St. Paul City Ry. Co., 86 Minn. 445, 90 N. W. 1050, was a case where the plaintiff, intending to take passage, signaled to stop the car at the usual stopping place, ran towards it, stumbled, fell upon the track just at the crossing, and was run over, receiving serious injuries. The motorman totally disregarded the signal, and made no effort to control or to stop the car. It was said in the opinion that "he was not required in the operation of his car to anticipate that possibly plaintiff might stumble and fall upon the track, and to have his car so under his control as to avoid a collision in such event." We can only conjecture what views would have been expressed if Winchell had walked in front of the car instead of stumbling and falling before it. The motorman here was not required to operate his car in anticipation that plaintiff might heedlessly walk in front of it. The rule is that a "motoneer in charge of a street car has the right to presume that pedestrians will exercise due care for their own safety and protection, and is not required to assume that every person in front of his car, at a considerable distance, will fail to exercise that care, or is in a position of peril." Russell v. Minneapolis St. Ry. Co., 83 Minn. 304, 86 N. W. 346. See also Baly v. St. Paul City Ry. Co., supra, page 39.

If, when asserting that the motorman did not have control of his car as it approached the crossing, the majority mean that he did not have such control as would enable him to avoid and prevent a collision should a person deliberately walk in front of it, I frankly concede that he did not have control; but the law is, if the cases heretofore decided can be relied on, that this motorman had the right to suppose the plaintiff would exercise due care for her own safety and protection, and he was not required to assume, when running toward the crossing, that she would fail to exercise that care or would place herself in a position of peril. The law established by this case is that when ap-

proaching a street crossing a motorman must assume that people may step off a sidewalk fifty feet from the same and walk in front of his car, and that he must have sufficient control over it to enable him to avoid a collision should the pedestrian put himself in such a perilous position. I cannot assent to the doctrine, because it is a departure from the long-established rule here, and is opposed to the uniform current of authority in every state in the Union.

Again, it is claimed that the motorman was negligent in failing to ring the car gong, or bell, as he approached the crossing, and the majority are of the opinion that the testimony was sufficient to justify the jury in finding that it was not sounded. Four witnesses testified upon this point in behalf of the plaintiff. Mrs. Peterson, the plaintiff, was asked if she heard the gong ring. Her answer was "No." Hanson, who, as before stated, was forty or fifty feet away, was asked the same question and made the same answer, but also stated that he gave no attention to the gong. Mrs. Larson testified that she heard no gong, and further said that she paid no attention to whether it rang or not, because "the cars are running there all the time." Peterson, the man on the trailer, testified that he heard no bell, but upon cross-examination admitted that he could not remember anything about it. Damm, the witness who stood about three hundred feet away, northwest, said that he could not tell whether the bell was rung or not—he was paying no attention. Frank Johnson, who stood talking with Hanson, testified that he could not hear any gong, but he also testified that he heard the bell on the other car "give a ring," and that both cars made "the usual noise." There was no further testimony upon this point in behalf of the plaintiff. Not one of these witnesses testified, or came anywhere near testifying, that the gong did not ring. They simply did not hear it, all admitting, virtually, that they paid no attention.

The motorman testified that he rang the gong from the time he saw the plaintiff step off the sidewalk. The conductor testified to the same thing. Hagstrom, who was on the walk about two hundred feet away, testified that his attention was attracted to the car by the loud ringing of the bell when it was half a block away from the place of collision. Connors, the newspaper reporter, testified to the same, and, further, that his attention was attracted because he thought it was a

patrol wagon, or a fire engine, which made him personally interested as a reporter. In my judgment it was conclusively shown by this positive, as against mere negative, testimony that the gong or bell was rung for half a block before the plaintiff was struck down.

In the case of Moran v. Eastern Ry. Co., 48 Minn. 46, 50 N. W. 930, this question was considered, and it was held that when the issue is as to the making of a noise, such as the ringing of a bell, the testimony of a witness that he did not hear any ring is of itself no evidence that it did not ring, as against positive testimony that it was rung. This is simply an application of the general rule of evidence that in such cases affirmative evidence must be taken to outweigh negative. I do not know of a state where the rule is otherwise, and it certainly has not been in this jurisdiction up to the present case. This rule was recognized in Evison v. Chicago, St. P. M. & O. Ry. Co., 45 Minn. 370, 48 N. W. 6, and in Terien v. St. Paul City Ry. Co., 70 Minn. 532, 73 N. W. 412.

As before stated, not a single person testified positively that the bell was not rung, and yet testimony of witnesses that they did not hear it is allowed to prevail as against the positive testimony of four that the bell was rung for some time before the accident, two of them stating that they would not have seen the accident at all if their attention had not been called to the scene by the furious ringing. But it is said in the main opinion that plaintiff's witnesses testified that they heard the gong of the other car running southwest, but not of this, and hence the evidence is not wholly of a negative character. I am unable to appreciate the force of this argument. That witnesses heard the bell on the other car renders it less probable that they would hear that on the car which struck plaintiff, because their attention was called to the other car. Here was a "distracting" circumstance. But the fact is that Hanson, who testified that he heard the bell on the other car, admitted that he was paying no attention, while Johnson's testimony was that "I just heard the bell, heard the bell give a ring," when the second car was passing him, fifty feet from the place of the accident. Not another witness was interrogated upon this point, and there was not a particle of evidence upon it except as above stated. It was the motorman's duty to exercise ordinary, not extraordinary, care. "It is only a reasonable degree of care and vigilance of the street car

motormen in watching for persons upon the car track in a public highway that is required." Isackson v. Duluth St. Ry. Co., 75 Minn. 27, 77 N. W. 433, and cases cited. See also Wosika v. St. Paul City Ry. Co., 80 Minn. 364, 83 N. W. 386. It seems to me that there was a total failure to establish defendant's negligence.

2. But passing this question, I am of the opinion that the plaintiff was conclusively shown to have been guilty of contributory negligence, and that if she was entitled to the verdict in this case this court has frequently done great injustice in other personal injury actions. It is well and properly settled that the failure of a person to look and listen when crossing a street car track does not, as a matter of law, render such person negligent. The parent case upon this question is Shea v. St. Paul City Ry. Co., 50 Minn. 395, 52 N. W. 902, but there, and in Watson v. Minneapolis St. Ry. Co., 53 Minn. 551, 55 N. W. 742, the persons injured were not pedestrians.

In the Shea case the plaintiff was driving a team of horses attached to a hack. He looked one way as he approached the car tracks, but before having time to look the other way (from which the car was approaching) his team was upon the track, and he could not escape a collision. There was at that time an attempt to have the court lay down the rule, established in cases of steam car accidents, that a person before crossing a street car track must both listen and look, to avoid the charge of contributory negligence, if injured. It was simply held that this rule was not applicable to street railways. In the Watson case the plaintiff was driving four horses attached to a heavily-loaded wagon. It was there held that he was not negligent in attempting to cross the track, having observed the car a block away, and having good reason to believe that it could and would be controlled and checked so as to avoid a collision with him before he got across the track. Neither case is exactly in point when a pedestrian has been injured, and certainly neither is pertinent here.

In the case at bar the plaintiff admitted that at the time of the accident she had full and ample knowledge of the location of the tracks and the manner in which cars were being operated thereon, and that she had complete use of her faculties of sight and hearing. It was broad daylight, and the avenue was a wide and straight one, there being nothing to prevent the plaintiff from seeing the car which hit her,

as it approached, for at least five hundred feet.    Under these circumstances she stepped from the curbstone into the gutter, at a point nearly fifty feet from the crossing, to go diagonally across to the opposite side of the avenue.    She was not on the crossing when injured, but several feet from it.    It is said in the main opinion that undoubtedly her attention was attracted by the car which was approaching from the opposite direction.    She made no claim of that nature for herself when upon the witness stand, and was not questioned upon the subject.    And, again, that "she had no distinct recollection at the time of the trial whether her attention was attracted by the car approaching from the city or not."    The plaintiff did not so state, or even intimate, upon the witness stand.    She was not asked the question, and that she did not recollect is simply inference and assumed, for it was not established by proof.    Her memory as to what occurred up to the time she was struck, except as to seeing an approaching car, was perfect.    So far as the record discloses, she was as oblivious of the approach of a car running in the opposite direction to the one which struck her as if it had been ten miles away.    The only testimony given by her which has any bearing upon the presence of another car is found in the following questions and replies, propounded and answered on cross-examination through an interpreter:

"Q. Did you see any car before the accident happened?    A. Says she has a faint recollection that she had seen one car. Q. Which direction was the car going that she saw, out of the city, or toward the city?    A. She says she doesn't know."

If the car which struck her was the one she saw, no excuse can be offered for her failing to stop and let it pass, and this is also true if she saw a car running the other way.    The witnesses all agreed that the car running southwest from the city did not reach the one which struck the plaintiff until just as the latter slacked up after the accident occurred.    Damm was the only witness testifying in respect to the approach of the second car, and he stood three hundred feet away, northwest.    He stated that there was a young boy racing that car with a wheel, and he was watching "this excitement" when he saw the plaintiff step in front of the car which struck her, and that "that is how I happened to see the accident."    Where the race occurred, whether it could

be seen from where plaintiff was, how long, or whether it continued so as to attract the attention of others, was not disclosed, but evidently it was not very serious or distracting, for no other witness mentioned it at the trial. How this circumstance can be of importance and controlling here, I cannot understand. The plaintiff was not shown to have seen it, and it should not be relied upon to relieve her from the charge that she failed to exercise ordinary care. If her attention was distracted by it she certainly would have so testified, and, as before stated, she made no claim of this character.

Really there was less excuse for the plaintiff's failure to exercise due care than there was for the plaintiff in the Russell case. It was there said that "in view of the fact that plaintiff was on foot and in possession of all her faculties, her eyesight and sense of hearing, and the control of her movements, with nothing to distract her attention, it is apparent that she was utterly unmindful of her surroundings, paying no attention to the street she was crossing or to the approaching car." While, as a matter of fact, there was nothing to distract the attention of Mrs. Russell, there was nothing which did distract the attention of this plaintiff, if we rely upon the record. If there be something to distract the attention of a pedestrian approaching street car tracks, but it is not observed or known, in what way does it differentiate the case from one in which there is nothing to distract the attention? The question is not what might have withdrawn the attention of the pedestrian from an approaching car, but, was it withdrawn? Was there something which could and which actually did distract and lead to the accident?

Again, in the Russell case, it was said: If a person by the exercise of ordinary care and prudence can discover an approaching car and avoid an accident, and fails to do so, he is guilty of contributory negligence, and cannot recover for injuries. What care or prudence did plaintiff exhibit? The answer is, actually admitted in the main opinion, not a particle. Let me compare these cases by quoting from the brief of defendant's counsel. In the Russell case, say counsel,

"The age of the plaintiff was fifty-eight, and in this sixty-nine, years; but the faculties of sight and hearing of each plaintiff were alike unimpaired and good. Neither of these plaintiffs,

by their own testimony, had anything to distract their attention, and neither of them looked or listened for an approaching car. In the Russell case the plaintiff had little previous knowledge of the track or the running of cars upon same where she was hurt; in this case the knowledge of the plaintiff of both the track and the running of cars was complete and ample. In the Russell case the plaintiff was upon the pavement of a street crossing; in this case the plaintiff attempted to cross the street where no crossing lay from the curb into it, at a point more than fifty feet distant from the street corner, a circumstance which should have led her to be more careful than otherwise regarding cars. In the Russell case it was claimed that the plaintiff got between the rails of the track the car was on, while the car was approaching, at a distance within which it could have been stopped; in this case it is conceded by the evidence introduced by the plaintiff that the plaintiff had not reached the first rail when she was struck."

In addition to what is said by counsel is the fact that the day of the Russell accident it was very cold, and Mrs. Russell was protecting her face with a muff as she walked across the street, while this plaintiff was injured in August, when the weather was warm and pleasant, and she had no need and was not shielding her face from the cold.

Language used by the court in the Russell case is exactly applicable to the facts now before us.

"A glance of the eye to the left would have informed her of the approach of the car. * * * Clearly, from her undisputed evidence, reasonable minds can arrive at but one conclusion, and that to the effect that her own indifferent and careless conduct was the cause of the injuries she received. Had she been the least mindful of her movements and surroundings, she would have discovered her danger, and could very readily have stepped aside and protected herself."

Summarizing the main opinion, I am obliged to conclude that it establishes the following rules:

90 M.—5

1. That it was negligence for the motorman to run his car seven or eight miles an hour between street crossings; or, if this be not so, that it was negligence for him to fail to anticipate that plaintiff might deliberately walk in front of the car without looking and without exercising any care whatever; or, if this was not negligence, that negative testimony as to the ringing of the bell can overcome and outweigh positive testimony to the contrary that the bell was rung.

2. That, if there are local conditions or circumstances which may have distracted the attention of a pedestrian who walks in front of a moving car, it is unnecessary to show that they did have that effect, because this court will on appeal infer and presume that they did. Proof that they did perplex, confuse, and draw the attention away is not required. It will be taken for granted.

It seems to me that this is not only a novel, but an extremely dangerous, departure from the well-settled rules of evidence that whoever desires any court to give judgment as to any legal right or liability dependent upon the existence of a fact which he asserts must prove the fact exists, and that the burden of proof as to any particular fact lies on that person who asks the court to believe in its existence. There are presumptions which prevail, and there are exceptions to these rules, but none are pertinent to the facts here.