MARGARET CURRAN v. ST. PAUL CITY RAILWAY COMPANY.[1]

January 18, 1907.

Nos. 15,001—(119).

**Contributory Negligence.**

In this, a personal injury action, it is *held* that the alleged contributory negligence of the plaintiff was a question of fact.

Action in the district court for Ramsey county to recover $2,500 for personal injuries. The case was tried before Olin B. Lewis, J., and a jury, which rendered a verdict in favor of the plaintiff for $923.75. From an order granting a motion for judgment in favor of the defendant notwithstanding the verdict, plaintiff appealed. Reversed and judgment ordered for plaintiff.

*Percy D. Godfrey* and *J. A. Giantvalley,* for appellant.
*Munn & Thygeson,* for respondent.

[1]Reported in 110 N. W. 259.

START, C. J.

On January 5, 1906, at about 9:30 a. m., the plaintiff was struck and injured by one of the defendant's street cars while she was in the act of crossing West Seventh street, in St. Paul, for the purpose of boarding the approaching car. She brought this action to recover damages for her injury, which was caused by the alleged wanton negligence of the motorman in charge of the car. The jury returned a verdict for the plaintiff in the sum of $923.75. The trial court, on motion of the defendant, made its order setting aside the verdict and directing judgment for the defendant notwithstanding the verdict, on the ground that the evidence conclusively showed that the plaintiff was guilty of contributory negligence. The plaintiff appealed from the order.

The evidence is conclusive that the motorman was guilty of negligence which directly caused the plaintiff's injury, and the sole question here to be decided is whether the evidence conclusively shows that the plaintiff was also guilty of negligence contributing to her injury. It is only in exceptional cases that negligence is a question of law. Whether or not this case falls within the exception must be determined from all the evidence, taking the most favorable view of it for the plaintiff that may be fairly inferred from it. The evidence tended to show these facts:

The plaintiff lived on the northerly side of West Seventh street, along which the defendant's car tracks are laid, between Fairview and Stewart avenues. Her residence is in a rural district, in which there are but few houses, and the cross streets are ungraded. At and before the accident it was the custom of the defendant, well known to the plaintiff, to stop its cars upon signal at any point in the vicinity of her residence to take on passengers. When the plaintiff wished to take the car to come down town, her custom was to cross the car tracks directly in front of her house, and then signal the approaching car, which would stop and take her on. On the morning she was injured there was considerable snow in the street, which the defendant's snow plow had thrown into heaps between and on both sides of the tracks, and for this reason she started diagonally across the street, where there was an opening in the snow, for the purpose of getting to the south side of the tracks to take an approaching car, which was going

down town, and in front of which she was crossing. When she started to cross the north track the car was some five hundred yards away, and when she got to the south track some seventy five yards away. The car was approaching at the rate of ten to fifteen miles an hour. She signaled the motorman to stop as soon as she saw the car. The motorman, however, was busy with his stove and did not observe her signals. While she did not know what he was doing, yet she did know that he was paying no attention to her signals. The track was straight and the view unobstructed. She continued to signal to him to stop while she was crossing the tracks, and expected him to stop in answer thereto.

She testified on her direct examination as to what occurred immediately before and at the time she was struck as follows:

Q. Now, when you were midway between the two rails of the track that you were struck on, how far away was the car at that time? A. It was about thirty feet away from me. Q. How many? A. About thirty feet when I was in between the two tracks. Q. And you took how many steps to get outside? A. I gave one great plunge across, because I knew, no matter which way I went, he had me. He didn't make any effort to stop whatever. Q. He didn't slacken his speed? A. No, he only gave one turn of the handle. Q. And when you were between the rails on this east-bound track, did you have time to turn and go back to get off? A. No; because I was stuck in the snow. The snow was so high on the track between the tracks, and on the side of the path what I had to cross out to my own place, that it wasn't possible for to get off it. Q. Now, between the rails of this track you were struck on, how deep was the snow? A. It was only just above my shoes. Q. That is where it had been scraped out? A. Yes; that is where it had been scraped out. Q. Now, on both sides of those rails, how deep was the snow? A. Well, I was above my knees on one side of it, and on the other side it went to about four feet of a path where it had gone up alongside of the path. I guess there was about four feet of a space to stand on when you got across to get the car.

On her cross-examination she testified thus:

Q. When you got over on the other track, before you got across it, just as you had crossed the south track, you got hit, is that the idea? A. No; I didn't get hit when I got to the south track. I got off the track when he hit me. Q. So you were clear across the track when he hit you? A. I was standing, but I hadn't time to face the car. Q. You were just over on the south side of the south track? A. I got into the heavy snow, and I couldn't get out quick enough, and I seen him right within thirty feet of me, and I then beckoned him to stop; but he never made no motion whatever to stop. I don't know what he was looking at, or what he was doing. Q. You don't know that he looked at you at all? A. No; he didn't look, or he wouldn't have run me down. * * * Q. You mean to say that before you had time to get across there, just as you got over on the south side, when you were hurrying, he hit you. That is your idea, is it? A. I tell you that I got off the track. Q. Well, just as you got off the track? A. I was off the track. That is all I knew after that. I knew I was off the track. I wasn't on the track, because, if I was, I wouldn't be here. Q. Didn't you ever go around the back end of the car to take the car? A. No.

The defendant offered no evidence as to how the accident occurred. If two facts could be eliminated from this case, the only reasonable conclusion to be drawn from the undisputed evidence would be that the plaintiff was guilty of negligence contributing to her injury. We should then have a case of the kind assumed by the defendant in its brief, namely: That the plaintiff "saw the car; signaled it to stop; knew that the motorman was not looking; took her chance to cross in front of the car, and made a mistake. It was not a street crossing, or a place where cars stop, but a rural district." The two facts are that it was the custom of the defendant to stop its cars on the plaintiff's signal at the place where she attempted to stop the car at the time she was injured, and that the snow on the south side of the tracks on which the car was approaching prevented her from clearing the tracks in time to avoid the threatened injury. The evidence of the

plaintiff as to the custom was in no manner contradicted by the defendant. The place of the accident, then, was one where the plaintiff had the same right to expect the cars to stop on her signal as she would have at a street crossing or at a signal post. When she started across the street, she had no reason to anticipate that the motorman would not be attending to his duty, see her signals, and slow down his car, and bring it to a stop so as to permit her safely to board it, or that the established custom would not be observed. In this respect this case is quite as favorable for the plaintiff as the case of Walker v. St. Paul City Ry. Co., 81 Minn. 404, 84 N. W. 222, 51 L. R. A. 632. See also Peterson v. Minneapolis St. Ry. Co., 90 Minn. 52, 95 N. W. 751.

While the plaintiff must have known that her progress in crossing the street might be somewhat retarded by the snow, yet it cannot be held as a matter of law that she was bound to anticipate that there would be a pile of snow on the south side of the tracks on which the car was coming which would prevent her from getting off the tracks in time. In view of the controlling importance of these facts, and that the plaintiff was in the public street where she had a right to be, it is clear that reasonable men might fairly draw different conclusions from the evidence as to the question of the plaintiff's alleged contributory negligence. It was then a question of fact, and the learned trial judge was right when he submitted the question to the jury.

It follows that the order appealed from must be reversed, and the case remanded to the district court, with direction to enter judgment on the verdict for the plaintiff. So ordered.