## GEORGE McGUIGGAN v. ST. PAUL CITY RAILWAY COMPANY.[1]

December 23, 1949.

No. 34,702.

*Clifford W. Gardner* and *John T. O'Donnell,* for appellant.
*C. J. Menz,* for respondent.

KNUTSON, JUSTICE.

In an action for personal injuries sustained by plaintiff when struck by a streetcar in crossing an intersection formed by Ramsey street and Smith avenue in the city of St. Paul, the jury returned a verdict for defendant. Plaintiff appeals from an order denying his motion for a new trial.

At the place of the accident, Ramsey street runs substantially in an east-west direction. From curb to curb it is 42 feet in width.

---

[1]Reported in 40 N. W. (2d) 435.

Double sets of streetcar tracks run along the street, the eastbound cars using the tracks to the south and the westbound cars those to the north. South of Ramsey street, Smith avenue runs in a north-south direction at right angles to Ramsey street until it reaches a point approximately 95 feet south of the south curb of Ramsey street. At this point, it turns in a northeasterly direction so as to intersect Ramsey street at an angle of about 40 to 45 degrees. The west side of Smith avenue, however, is extended straight north to Ramsey street, while the east side runs in a northeasterly direction. The result is the formation of a large triangular intersection. Smith avenue is 40 feet in width south of the point where the triangular intersection commences and, likewise, is 40 feet in width north of Ramsey street. North of Ramsey street, to the west of Smith avenue, Thompson street enters at right angles, ending at the north line of Ramsey street. The distance from the center of Smith avenue to the center of Thompson street, along the north line of Ramsey street, is approximately 135 feet. The center of Thompson street is approximately in line with the west curb line of Smith avenue as it is extended north to Ramsey street.

The accident occurred about midnight on March 1, 1946. The weather during the day had been mild enough to melt the snow and ice, and it had frozen in the evening so as to leave the streets and sidewalks in a slippery condition. The intersection was lighted by an overhead light above the intersection and a street light near the point where the westbound streetcar would stop on the northeast corner of the intersection.

On the evening in question, plaintiff, who was 17 years of age, in company with several other young people, including Virginia Kidd, a younger brother, Raymond McGuiggan, Richard Kamps, and Joan O'Donnell, had spent the evening at the Catholic Youth Center, located on Smith avenue several blocks north of the intersection between Ramsey street and Smith avenue. The group left the youth center in time so that Joan could be home by 12 o'clock. They walked south on the east side of Smith avenue to the northeast corner of the intersection involved. At this point, Virginia, Ray-

mond, and Richard remained in order to board a westbound Grand-Mississippi streetcar. Plaintiff walked with Joan to her home, which was located on the west side of Smith avenue a short distance south of the intersection. It was agreed between them that the three members of the party who remained at the corner were to keep a watch for the westbound streetcar, which enters Ramsey street from the south two blocks east of the intersection. It was agreed that they would signal plaintiff by whistling as soon as they saw the streetcar coming around the corner from Seventh and that plaintiff would then return. Plaintiff had barely reached the O'Donnell house when the prearranged signal was given announcing the approach of the streetcar. It was then approximately 11:45 p. m. Plaintiff then proceeded to run across a vacant lot north of the O'Donnell home to the west sidewalk of Smith avenue, along this sidewalk for a short distance, when he turned to his right and crossed the street to the east sidewalk, from which point he proceeded north along the sidewalk to the southeast corner of the intersection. Here, he paused momentarily to observe the approaching streetcar. At that time, Virginia was standing on the boulevard on the northeast corner of the intersection, while Raymond and Richard were standing out in Ramsey street near the car stop on that corner preparatory to boarding the approaching streetcar.

Plaintiff testified that he first saw the streetcar at the time he reached the southeast corner of the intersection, and that it was then about 110 feet east of the intersection in question. This is substantially corroborated by Virginia. All the witnesses agree that the streetcar was traveling about 15 miles per hour. Plaintiff testified that as he watched the streetcar it slowed down. According to Virginia, it slowed down to about four or five miles an hour. Thinking that it was going to stop, he ran out into the street, intending to cross over to the car stop and board the car with the others. To reach the northeast corner of the intersection, it was necessary for him to travel at an angle across Ramsey street because of the fact that Smith avenue at that point crosses Ramsey at an angle. When he reached the outside or south rail of the

eastbound streetcar tracks, which was a distance of about 18 feet from the south curb line of Ramsey street, he testified that the car was about 15 feet east of the point at which he was crossing, that it was then picking up speed, and he knew at that point that the car was not going to stop. He further testified that because of the slippery condition of the street he was fearful of sliding under the car if he attempted to stop. He then veered sharply to the left at about a right angle to the direction in which he was traveling, which would have brought him out of the intersection at the northwest corner thereof had he continued in a straight line. He testified that it was then his intention to continue to cross the street in front of the streetcar at a point west of the place where he had originally intended to cross. When he was about halfway across the intersection from east to west, he was struck by the right front corner of the cowcatcher on the streetcar. He had then almost cleared the front end of the streetcar. His body slid a few feet and came to rest in the gutter on the northwest corner of the intersection. As a result of the accident, plaintiff suffered severe injuries, including a skull fracture and other head injuries.

Plaintiff makes numerous assignments of error, relating largely to the admissibility of evidence with reference to defendant's negligence and the alleged misconduct of counsel. In the view we take of the case, we need consider only the question of plaintiff's contributory negligence.

It is defendant's contention that plaintiff was guilty of contributory negligence as a matter of law. Plaintiff contends that he was confronted by an emergency, in that when he realized that the streetcar would not stop it was too late for him to stop his forward progress because of the slippery condition of the pavement, and that, confronted by this emergency, he turned to his left and crossed in front of the streetcar at a point farther west than he had originally planned to cross.

The question of plaintiff's contributory negligence was submitted to the jury without any motion for a dismissal or for a directed verdict. However, we have long been committed to the doctrine

that where the verdict is right as a matter of law there will be no reversal on account of errors in the admission of evidence, the instructions of the court, or misconduct of counsel which does not affect the correctness of the verdict. DeVere v. Parten, 222 Minn. 211, 214, 23 N. W. (2d) 584, 586, where we said: "Where the complaining party has no cause of action, the law compels a finding against him regardless of any finding by the trier of fact." Again, in Gordon v. Pappas, 227 Minn. 95, 100, 34 N. W. (2d) 293, 296, we said that "if the verdict is right as a matter of law there will be no reversal on the ground of erroneous instructions nor on the ground of erroneous rulings if those rulings do not affect the correctness of the verdict." It follows that if the evidence establishes plaintiff's contributory negligence as a matter of law the order must be affirmed, irrespective of errors in the admission of evidence or alleged misconduct which do not affect the finding of contributory negligence.

We are of the opinion that plaintiff's own testimony establishes his contributory negligence as a matter of law. That he ran into the street with full knowledge of the fact that it was slippery and that he crossed in front of the streetcar after knowing that it was not going to stop, plaintiff does not deny. His testimony in that respect is as follows:

"Q. Now whatever the condition of the street was, you knew that before you started to run along there, you knew it because you had walked over it on the way to this house, that is true is it not?

"A. Yes.

"Q. You knew what the condition of the sidewalk along Ramsey was?

"A. Yes.

"Q. Whatever the condition may have been. And you knew what the condition of the street was across Ramsey from the south side to the north side?

"A. Yes.

"Q. Before you undertook to cross it on your way back?

"A. Yes.

\* \* \* \* \*

"Q. \* \* \* you ran in a certain direction toward the car stop up to the time you got to the outside rail of the eastbound track?

"A. Yes.

"Q. Then you changed your direction already described in your testimony?

"A. Yes.

"Q. And it was your intention at the time you changed the direction to continue to try to cross the street ahead of this streetcar, but to do so at a point west of the place where you were headed to at the time that you changed the direction?

"A. Yes.

"Q. And it is also true, is it not, that when you changed direction and went as you say, you intended to continue to try and cross ahead of that streetcar at a point west of the place where you were headed for before you changed the direction, that was after you saw that the streetcar was increasing its speed, was it not, according to your claim?

"A. Yes.

"Q. And after you knew that the streetcar was not going to stop or had reason to believe it was not going to stop at that corner, that is true is it not, when you changed direction?

"A. Yes.

"Q. You still continued to try and cross ahead of it?

"A. Yes.

"Q. And at the time that you changed direction in which you were going, intending to still try to cross in front of this streetcar at a point west of the place that you were headed for before you changed direction, at that time the front of the streetcar was according to your claim only about fifteen feet away from you?

"A. Yes."

If any emergency existed, it was caused by plaintiff's own conduct. Running into a street known to be slippery, so as to intercept a fast-moving streetcar, might well be sufficient, alone, to charge

plaintiff with contributory negligence. Vandenbout v. Rochester Ry. Co. 202 N. Y. 61, 95 N. E. 5. But, even if we assume that an emergency did exist when plaintiff had reached the first track of the eastbound rails and while the streetcar was still some 15 to 18 feet away, it must be obvious that when plaintiff had maneuvered so as to successfully turn to the left the emergency was then over. Knowing that he could not cross in front of the streetcar by going straight ahead along the path in which he was traveling, plaintiff still attempted to cross in front of the car by a longer route than that which he had determined he could not successfully complete.

The facts in the instant case are clearly distinguishable from cases where a pedestrian looks and either fails to see an approaching streetcar or train or, seeing it, has reason to believe that he has sufficient time to cross in front of it. Flaherty v. G. N. Ry. Co. 218 Minn. 488, 16 N. W. (2d) 553, and others of similar import, relied upon by plaintiff, are not in point here. Neither are cases of any help where the question of contributory negligence has been submitted on disputed testimony. Nor are we unmindful of the many cases in which it has been held that, where a pedestrian has a right to assume that a streetcar will stop or there are other distracting circumstances, it is for the jury to pass upon a pedestrian's contributory negligence if he is struck while attempting to pass in front of the car. Illustrative of such cases are the following:

Walker v. St. Paul City Ry. Co. 81 Minn. 404, 411, 84 N. W. 222, 224, 51 L. R. A. 632, where we said:

"* * * In this case, added to the right to expect a reasonable and customary speed, plaintiff also had a right to suppose that the street car would stop for her at the time she passed on to the catastrophe she could not anticipate."

In Peterson v. Minneapolis St. Ry. Co. 90 Minn. 52, 95 N. W. 751, there were other distracting circumstances, such as a car approaching from the opposite direction, which led the court to hold that the contributory negligence of the pedestrian was for the jury.

In Lake Shore Elec. Ry. Co. v. Ordway, 24 Ohio App. 317, 321, 156 N. E. 235, 236, the court held that contributory negligence was for

the jury where a prospective passenger about to cross the track in front of a car had a right to assume that the car would stop at an established stop, "unless in the exercise of ordinary care it was apparent to him that it would not so stop." Bergmann v. Public Service Ry. Co. 98 N. J. L. 487, 120 A. 193; Courtney v. Public Service Ry. Co. 96 N. J. L. 308, 115 A. 740; Unterlachner v. Wells, 317 Mo. 181, 296 S. W. 755; Lackey v. United Rys. Co. 288 Mo. 120, 231 S. W. 956 (car traveling at unlawful speed); Simoneau v. Pacific Elec. Ry. Co. 166 Cal. 264, 136 P. 544, 49 L. R. A. (N. S.) 737 (reliance upon whistle, indicating car would stop); Hubbard v. New York Rys. Co. 183 App. Div. 470, 170 N. Y. S. 889 (car suddenly accelerated its speed); Hunt v. Old Colony St. Ry. Co. 206 Mass. 11, 91 N. E. 883 (prospective passenger about to cross track waved his hand; motorman shut off power, applied brakes, and checked his speed; held that pedestrian had right to assume that car would stop). In Cuddy v. Boston Elev. Ry. Co. 208 Mass. 134, 135, 94 N. E. 251, 252, the jury could find that the pedestrian crossed at the invitation of the motorman. The court recognizes the rule that "One who without excuse steps in front of a swiftly moving car already so dangerously near to him cannot recover for an injury to which he has thus contributed." Many other cases of like import could be cited, but in no case, so far as we have been able to find, has the court of any state held that where a prospective passenger attempts to run in front of a swiftly moving streetcar, knowing that it is not going to stop, he can recover.

In Anderson v. Market St. Ry. Co. 116 Cal. App. 282, 286, 2 P. (2d) 529, 530, the facts are quite similar to those in the case now before us. In that case the court said:

"* * * She knew that she was on the 'blind side' of the car where no passengers were admitted and knew that the car would stop only for persons waiting on the safety zone. She knew that there was nothing about the manner in which the car approached to indicate that it was stopping and, to the contrary, testified that she knew that it 'came fast the whole time'. Having this knowledge she proceeded to run directly into its path and the unfortunate accident

is obviously accounted for by her great hurry to beat the oncoming car as she crossed the track. In our opinion the conclusion that her own negligence was a proximate cause, if not the sole proximate cause of her injuries, follows necessarily and irresistibly from the undisputed facts."

In Davidson v. City of Detroit, 307 Mich. 420, 427, 12 N. W. (2d) 413, 416, the court, in affirming a verdict for defendant, said:

"When plaintiff approached the car track and gave the usual signal of her desire to become a passenger, she had the right to assume that the streetcar would stop. However, this did not obviate the necessity of taking usual precaution before attempting to cross the track in front of the streetcar that (as plaintiff admits) showed no evidence of slowing down, and plaintiff had no right to continue the presumption that the car would stop when she observed that it was not slowing down."

In Evanich v. Milwaukee Elec. Ry. & L. Co. 237 Wis. 111, 295 N. W. 44, under the Wisconsin comparative negligence law, the jury found that a pedestrian, who was killed in attempting to cross in front of a streetcar, and the motorman were both negligent. It found that the pedestrian's negligence contributed 20 percent and the motorman's negligence 80 percent toward causing the accident. In reversing the judgment and holding that the pedestrian's negligence was at least equal to that of the motorman, and consequently that there could be no recovery under the Wisconsin law, the court said (237 Wis. 114, 295 N. W. 45):

"* * * the motorman failed to maintain a proper lookout, but it is also evident that the deceased has equally failed to perform his duty in the matter. Either he did not see the car, or seeing it he heedlessly invited disaster by hurrying in front of it. His desire to become a passenger on that particular car did not relieve him from the obligation of exercising ordinary care for his own safety.

\* \* \* \* \*

"* * * we have a case where the conduct of the deceased is to be weighed against that of the motorman. The latter had the right

of way. He was proceeding at a lawful rate of speed. For some reason he failed to see the deceased until his car was within two feet of the deceased. The deceased must have seen the streetcar and must have been aware that it was not stopping as he desired it to do. Placing himself in the zone of danger, if not deliberately reckless, must have been due to a belief that he could outstrip the car and reach safety across the track. Opportunity for observation existed. Negligence of the deceased was as much a cause in bringing about the collision as the conduct of the motorman."

In Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 359, 16 N. W. (2d) 289, 293, 156 A. L. R. 371, the facts were in dispute, but we held that plaintiff's contributory negligence was for the jury for the reason that "the jury might well have concluded that decedent had a right to assume that the streetcar was being slowed down to permit him to cross ahead of it." We can indulge in no such presumption here.

The distinction between those cases where recovery may be had and those where the contributory negligence is one of law is pointed out in Curran v. St. Paul City Ry. Co. 100 Minn. 58, 61, 110 N. W. 259, 260, where we said:

"* * * If two facts could be eliminated from this case, the only reasonable conclusion to be drawn from the undisputed evidence would be that the plaintiff was guilty of negligence contributing to her injury. We should then have a case of the kind assumed by the defendant in its brief, namely: That the plaintiff 'saw the car; signaled it to stop; knew that the motorman was not looking; took her chance to cross in front of the car, and made a mistake. It was not a street crossing, or a place where cars stop, but a rural district.' The two facts are that it was the custom of the defendant to stop its cars on the plaintiff's signal at the place where she attempted to stop the car at the time she was injured, and that the snow on the south side of the tracks on which the car was approaching prevented her from clearing the tracks in time to avoid the threatened injury. The evidence of the plaintiff as to the custom

was in no manner contradicted by the defendant. The place of the accident, then, was one where the plaintiff had the same right to expect the cars to stop on her signal as she would have at a street crossing or at a signal post. When she started across the street, she had no reason to anticipate that the motorman would not be attending to his duty, see her signals, and slow down his car, and bring it to a stop so as to permit her safely to board it, or that the established custom would not be observed."

In the case now before us, both facts which made the contributory negligence a question for the jury in the Curran case are missing. Plaintiff here not only had no reason to assume that the car was going to stop, but by his own testimony frankly admitted that he knew it was not going to stop when he crossed in front of it. After he had successfully turned to the left so as to obviate the danger of sliding into the car, there was no reason for him again to turn to his right and cross in front of the car.

Plaintiff was fully aware of the approaching streetcar before he entered the street. When a substantial distance from the car he knew not only that the car was not going to stop, but that he could not beat the car if he traveled in a straight line. After turning to the left, instead of stopping or turning farther to the left, which would have safely brought him out of the range of the car, he again turned to the right and tried to beat the car by a longer route than the one he had first followed and which he knew he could not successfully travel. The conclusion seems inescapable that plaintiff decided that he could outrun the streetcar and that by a narrow margin he lost the race. In assuming such suicidal risk, he must be held guilty of contributory negligence as a matter of law.

What the court said in Vandenbout v. Rochester Ry. Co. 202 N. Y. 61, 95 N. E. 5, *supra,* may well be applied here. In that case, counsel for defendant requested the court to charge the jury that if the deceased saw that it was necessary to run in order to get across ahead of the car he was guilty of contributory negligence as a matter of law. The trial court refused to give the requested in-

structions. On appeal, the New York court said (202 N. Y. 63, 95 N. E. 6):

"* * * This request was refused. We think erroneously. It contained the meat of the whole case. It may not have been negligence for a young alert man to run across the street, even if slippery, instead of walking, but if he ran because he saw that the car was so near that, proceeding in the ordinary manner would not save him from being struck, he was taking chances, running into danger and assuming a risk he had no right to incur, and that is exactly what the request called for. * * * While the deceased could not be said to be guilty of negligence as matter of law in running, still if he ran because the car was so close to him that he could not pass in front of it otherwise, he necessarily took a risk of falling so close to the car that he could not avoid being struck by it."

The verdict is right as a matter of law; consequently, errors in the admission of evidence relating to defendant's negligence, if there are any, and alleged misconduct of counsel are harmless and furnish no ground for a new trial.

Affirmed.