## JOHN C. SHEA *vs.* ST. PAUL CITY RY. CO.

Submitted on briefs June 30, 1892. Decided July 7, 1892.

**Evidence.**

Evidence *held* to justify the verdict.

**Crossing a Street Railway, what Care Required.**

The degree of care required at the crossing of a highway and an ordinary steam railroad is not the test of care required in crossing the track of a street railroad on a public street. Hence the rule in the former case that one approaching the crossing must look up and down the track before attempting to cross is not necessarily applicable to the latter. The failure to do so is not, as a matter of law, negligence.

Appeal by defendant, the St. Paul City Railway Company, from an order of the District Court of Ramsey County, *Brill,* J., made September 10, 1891, denying its motion for a new trial.

The plaintiff, John C. Shea, a liveryman, was on January 26, 1891, at ten o'clock in the forenoon, driving his team and hack east along Eighth Street in St. Paul. In crossing Jackson Street his carriage was struck by the electric street railway cars of defendant, going south, and he was injured, and his hack overturned and broken. He brought this action, claiming the collision was caused by the negligence of defendant. It answered, denying negligence on the part of its servants and alleging contributory negligence on his part in not keeping out of the way. Plaintiff had a verdict for $800. Defendant moved for a new trial, but was denied.

*Henry J. Horn,* for appellant.

There is no evidence whatever that the defendant's trainmen saw the plaintiff in time, or under such circumstances as would have required them to stop the train before it actually collided with plaintiff's hack. The evidence of plaintiff shows a clear case of contributory negligence upon his part and brings the case within the ruling of *Miller* v. *St. Paul City Ry. Co.*, 42 Minn. 454.

The plaintiff admits, what all his witnesses show, that he did not notice the approaching train until he was on its tracks. He neither heeded the gong or bells which were continuously rung, nor did he look up Jackson Street for an approaching train. He says he looked down Jackson Street, that is, he looked only one way. He admits that he put himself in a dangerous position, that his horses were gentle and going at a moderate pace. He could have readily stopped his team and avoided the collision; and it is obvious if he had looked up Jackson Street as soon as he got there, he would have seen the cars and had ample time to have stopped his team until the train passed by.

There are exceptional cases in which contributory negligence of the plaintiff does not prevent his recovery. Where the negligence of the defendant is wanton or willful, and of a criminal character, it is not excused by plaintiff's contributory negligence. Such exceptional cases are never to be presumed, but must be sustained by clear proof. It is among the necessary elements of such exceptional cases that the defendant should actually see the plaintiff in a dangerous position in time to avoid the accident by reasonable efforts, and under such circumstances as to know that the plaintiff could not extricate himself in time. *Scheffler* v. *Minneapolis & St. L. Ry. Co.*, 32 Minn. 518; *Locke* v. *First Div. St. P. & Pac. Ry. Co.*, 15 Minn. 350, (Gil. 283;) *Cook* v. *Central Railroad & Banking Co.*, 67 Ala. 533; *Terre Haute & Ind. Ry. Co.* v. *Graham*, 46 Ind. 239; *Indianapolis & V. R. Co.* v. *McClaren*, 62 Ind. 566; *McKenna* v. *New York Cent. & H. R. R. Co.*, 8 Daly, 304.

Unless the act of the defendant was willful or wanton the plaintiff cannot escape the consequences of his contributory negligence. *Banks* v. *Highland Street Ry. Co.*, 136 Mass. 485; *Miller* v. *St. Paul City Ry. Co.*, 42 Minn. 454; *Reed* v. *Minneapolis Street Ry. Co.*, 34 Minn. 557; *Carroll* v. *Minnesota Valley R. Co.*, 13 Minn. 30, (Gil. 18;) *Griggs* v. *Fleckenstein*, 14 Minn. 81, (Gil. 62.)

Any different rule would practically render nugatory the wholesome qualification that contributory negligence is a bar to plaintiff's recovery.

*Erwin & Wellington* and *D. F. Peebles*, for respondent.

The motorman, looking down the track, must have seen the plaintiff's team in the position they were in. What the distance was between the car and the team at the moment he saw it, was a question for the jury, and they must have found in favor of the plaintiff. The motorman testifies that he could have stopped that car in fifteen feet. He testifies that he applied the brake, but the physical facts of the case are all against his statement. It would have been impossible for the collision to occur had he put on the brakes when he first saw the plaintiff on the track. If the trainmen saw the danger in time to avoid the accident, and recklessly kept on without regard to the consequences, then the defendant would be liable, notwithstanding the plaintiff's negligence. *Hepfel* v. *St. Paul, M. & M. Ry. Co.*, 49 Minn. 263.

MITCHELL, J. Action to recover damages for injuries caused by the alleged negligence of the defendant. The plaintiff was driving a hack along Eighth street, in the city of St. Paul, going east. As he approached the intersection of Eighth and Jackson streets, (which cross at right angles,) an electric street car of defendant was approaching the same point from the north, running down Jackson street. As plaintiff was crossing the railway track on the intersection of the two streets, the car collided with the hack, causing the injuries complained of. The plaintiff claimed that the defendant was negligent in running the car at an unusual and dangerous rate of speed, and in not giving timely signals of its approach to the street crossing. The defendant denied these allegations of negligence on its part, and alleged that the injuries were caused by plaintiff's own negligence, especially in driving upon the track without looking for approaching cars. Most of defendant's assignments of error, as well as of his argument, is to the point that the verdict was not justified by the evidence. An examination of the record, however, satisfies us that upon the questions both of defendant's negligence and of plaintiff's contributory negligence the evidence made a case for the jury. There was evidence reasonably tending to prove that the car was being run at an unusually rapid rate of speed,

(from fifteen to twenty miles an hour according to several witnesses;) that the speed was unchecked until after the collision occurred; that it was running on quite a heavy down grade, where it is more difficult to check the speed; that no signal of its approach was given until it was within forty to sixty feet of the crossing; that this was in a populous part of the city, and the streets in question, which are rather narrow, much used thoroughfares of travel; and that buildings on the corners necessarily obstruct the view from one street up and down the other, until a person is within a comparatively short distance of the crossing.

. It is hardly necessary to say that upon such a state of facts, if found to be true, the jury would be justified in finding that the defendant was negligent.

Defendant's main contention, however, is that the evidence conclusively shows that plaintiff was guilty of contributory negligence. There was evidence tending to show that he was driving down Eighth street at a slow trot, say five miles an hour; that he heard no signals of the approach of cars; that on reaching the crossing he looked south, down Jackson street, and saw no cars; that he then turned his head to look the other way, (by this time his horses' heads were just above over the nearest rail of the car track,) and saw a car some sixty feet distant, coming down; that he immediately attempted to stop his horses, but finding that he was unable to do so, owing to their restiveness, he struck them with the whip, and attempted to urge them rapidly across the track, but before he succeeded the car struck the hind part of the vehicle, causing serious injuries to it as well as to himself.  The evidence shows that if, after he got beyond the obstruction of the building on the corner, he had looked northward as well as southward, he could have seen the approaching car in time to have stopped his team before getting in dangerous proximity to the car track, and his failure to do so is claimed to be negligence *per se*, under the rule, so often applied by this and other courts, that it is the duty of a traveler on approaching a railroad crossing to look both ways for approaching trains before attempting to cross the railroad track.  The fallacy in this, which runs all through counsel's argu-

ment, is in assuming that the degree of care required at the crossing of a highway and an ordinary steam railroad is the test of the care required in crossing the track of a street railroad on a public street. The two cases are not alike. In the first place, street cars do not, or at least ought not to, run at the same rate of speed, are not attended with the same danger, and are not so difficult to stop quickly, as those of an ordinary railroad.

In the next place, the cars of a street railway have not the same right to the use of the track over which they travel. The ordinary railroad is itself a highway, and has a proprietary interest in and to its right of way, even where the public have an easement for highway purposes over the same ground. Public necessity requires that the rights of a traveler on a highway across an ordinary railroad should be, to a certain extent, subordinate to those of the railroad company. But a street railway is not a highway. A street railway company has a mere right to use the street in common with the public generally. It is merely in aid of the identical use for which the street was created, and not a new and independent one, and it is on that very ground that a street railway company is not required to pay compensation to the owners of abutting property. Street cars are in the main governed by the same rules as other vehicles on the street, and their owners have only an equal right with the traveling public to use the street,—they have no proprietary right to any part of the street. Of course, there are some modifications of this general rule growing out of the necessities of the situation. For example, as street cars run on a track, they cannot turn out to one side of it. Hence what is called "the law of the road" does not apply to them. It would be inexpedient to attempt any complete enumeration of the modifications of or exceptions to the general rules of equality of rights between street cars and other vehicles used on a street. But it is certain that there is no modification or exception that relieves a street railway company from exercising, at least, as much care to avoid collisions with other vehicles as the owners of the latter are required to exercise in order to avoid collisions with the cars. Defendant's requests to charge, the refusal to give which is assigned as error, are framed upon the theory that the street rail-

way has such a proprietary and superior right to the part of the street where its track is laid that the duty of taking care to avoid collisions rests exclusively upon other "wayfarers." For example, the second request was that "it is the duty of wayfarers using the street where railway tracks are laid to keep out of the way of trains of cars which are being operated thereon;" and the third was that "the conductor or trainmen in charge of such train or car upon the street has a right to assume that wayfarers will keep out of the way of approaching cars which are being operated upon the track of the railway." These requests are framed upon an erroneous theory as to the respective rights and duties of street railway companies and others in the use of the street, and were properly refused. And, for the reasons already suggested, the rule that one approaching a railroad crossing upon a highway must look up and down the track before he attempts to cross, is not applicable as a hard and fast rule, to one who attempts to cross a street car track upon a public street. The failure to do so is not, as a matter of law, and without regard to circumstances, negligence. Notwithstanding plaintiff's failure to do so as soon as he might have done, the question of contributory negligence was, under the circumstances, one for the jury. Beach, Contrib. Neg. § 290; Shear. & R. Neg. § 462; *Lynam* v. *Union Ry. Co.*, 114 Mass. 83; *Chicago City Ry. Co.* v. *Robinson*, 127 Ill. 9, (18 N. E. Rep. 772;) *Shea* v. *Potrero & B. V. Ry. Co.*, 44 Cal. 414; *Adolph* v. *Central Park, N. & E. Riv. R. Co.*, 76 N. Y. 530.

Counsel argues in his brief some matters that are not assigned as error, and which, for that reason, we cannot consider. What we have already said covers all the points in the case, worthy of special notice, which are raised by sufficient assignments of error.

Order affirmed.

(Opinion published 52 N. W. Rep. 902.)