LUCIUS E. WATSON *vs.* MINNEAPOLIS STREET-RAILWAY CO.

Argued June 2, 1893.    Affirmed June 27, 1893.

| | |
|---|---|
| 53 | 551 |
| 55 | 182 |
| 53 | 551 |
| 59 | 49 |
| 60 | 121 |
| 53 | 551 |
| 70 | 537 |
| 53 | 551 |
| 74 | 439 |
| 53 | 551 |
| 80 | 367 |
| 80 | 426 |
| 53 | 551 |
| 81 | 411 |
| 53 | 551 |
| 83 | 307 |

**Opinion, Witness Qualified to Give.**

One who had been a conductor of an electric street car for two months *held* competent to testify within what distance such a car, going at a specified rate of speed, can be stopped.

**Evidence Sufficient to Submit to Jury.**

Evidence *held* to make a case for the jury on the questions of both defendant's and plaintiff's negligence.

**Jury Sent Back for Further Deliberation.**

When a jury report they cannot agree, it is in the discretion of the court to send them out for further deliberation.

**Jury may be Urged by the Judge to Agree.**

In such case it is proper for the court to urge them to use all reasonable efforts to come to an agreement, and to state, as a reason for it, that the case is an expensive one to try.

**Care Required of Street Railway at Crossings.**

At a street crossing as high a degree of care is required of those in charge of an electric street car as of those driving other vehicles.

**Charge to the Jury Stating Facts Proved.**

Where the fact to be found is to be determined upon the consideration of numerous facts and circumstances proved, whether and to what extent the trial court, where it has fully, correctly, and clearly stated to the jury the general rules that are to control them in their deliberations on the facts, shall call their attention to particular facts and circumstances, is in its discretion.

**Street Railway has No Priority of Way at Crossings.**

A street-railway car has no priority of way at a street crossing, with respect to other vehicles, and when the driver of such another vehicle, approaching the street-railway track to cross it, sees a car approaching at

such a distance that he can apparently make the crossing safely, he has a right to attempt it, and it is not negligence *per se* in him to attempt it without looking a second time at the car.

## Negligence of Electric Railway at Crossings.

Upon much-traveled streets in a city it is negligence to run an electric street-railway car over a crossing at a high and dangerous rate of speed; and it is also negligence to run it over a crossing, the person in charge of it not being on the lookout, nor having the car under control, nor using the proper means to stop it, so as to avoid a collision.

## Damages.

Damages *held* not excessive.

Appeal by defendant, Minneapolis Street-Railway Company, from an order of the District Court of Hennepin County, *Thomas Canty,* J., made November 19, 1892, denying its motion for a new trial.

On April 23, 1892, the plaintiff, Lucius E. Watson, was driving east on Eleventh Avenue across the defendant's railway tracks on Washington Avenue, South. He had four horses and a heavy load of lumber, about 4,000 feet, which he was delivering for a lumber company. An electric interurban street car coming from the south struck his load before he could get it across and clear of the track, and he was thrown off and injured. He brought this action to recover damages, claiming the collision was due to the negligence of the motorman. That he ran the car at the rate of over twelve miles an hour, and allowed his attention to be diverted by something on the east side of the street, so that he failed to look ahead and see plaintiff and his load. The answer was a general denial. The evidence was conflicting as to the rate of speed of the car, and whether or not the motoneer saw plaintiff, or struck his gong, or applied the brake, or turned off the current.

In the charge to the jury the Judge said: "The question for you to determine is, who is to blame? If both parties are to blame, or if neither party is to blame, or if plaintiff only is to blame, he cannot recover. The law does not require that he shall look and listen in all cases before crossing a street-car track. You must decide from all the circumstances in the case how much vigilance and care a man of ordinary prudence should use, in crossing or in looking and listening before he crosses, and in continuing to look and listen as he crosses, these street-car tracks under the circum-

stances. A man with a heavy load and four heavy horses should use more care and vigilance than a man driving a shorter team and a lighter vehicle. If you find plaintiff was not to blame, that he used a reasonable and ordinary amount of care and vigilance in looking for cars, such as he should have used under the circumstances, then you must determine whether or not the defendant was to blame, through its driver. It is the duty of the defendant also to use reasonable care, to see that it does not injure persons, passing over its tracks; it is the defendant's duty to use reasonable care to give warning of its approaching cars when it sees persons about to cross or approaching the crossings of its street-car track, or where they are likely to cross. It is the defendant's duty to keep its cars under reasonable control at such times; and it is its duty to run at a reasonable rate of speed through the crowded streets where there is a great deal of public travel. You must decide whether the driver of this car did give reasonable warning, when he saw this man about to approach this crossing, or about to cross these tracks; whether he used reasonable care in keeping his car under his control at that time; whether he was running at an improper or dangerous rate of speed. A great many accidents and injuries occur in this world where nobody is to blame, and the fact that the street car struck this man is no reason why he should recover from the company, unless it was the fault of the defendant company, and not his fault."

The jury retired and were out all night. The next morning they came into court and reported that they could not agree. The judge sent them out again, saying: "It is your duty, gentlemen, to use all reasonable efforts to come to an agreement in this case. We have taken three days to try it. The fact that it is a difficult case is no reason why you should not use every honest effort to come to an agreement, because the next jury will have to do the same thing; and if you don't agree, the next one will have to try it. It makes expense to the county and to the parties. It is your duty to use every honest and reasonable consideration in attempting to come to an honest and fair agreement."

The jury retired, and soon after returned into court, and rendered a verdict for plaintiff, and assessed his damages as $6,000. The defendant made, settled and filed a case, containing all the evidence

and the charge to the jury, and its requests to charge, and its various exceptions to the rulings, and moved the court to set aside the verdict and grant a new trial. This application was denied, and it appeals.

Some of the assignments of error mentioned in the opinion were as follows:

"*Third.* The District Court erred in denying the motion of appellant to direct a verdict for the defendant.

"*Fourth.* The District Court erred in holding that the evidence given on the trial sustained the negligence alleged in the complaint.

"*Fifth.* The District Court erred in holding that the evidence given on the trial did not show contributory negligence on the part of the plaintiff.

"*Eighteenth.* The District Court erred in denying the defendant's motion for a new trial.

"*Nineteenth.* The District Court erred in holding that the verdict of the jury was not contrary to law.

"*Twentieth.* The District Court erred in holding that the verdict of the jury was justified by the evidence. ·

"*Twenty-first.* The District Court erred in holding that the verdict of the jury was justified by the evidence, and the weight thereof.

"*Twenty-second.* The District Court erred in holding that the evidence did not show contributory negligence on the part of the plaintiff.

"*Twenty-sixth.* The verdict of the jury is not justified by the evidence.

"*Twenty-seventh.* The verdict of the jury is against the evidence and the weight thereof."

*Koon, Whelan & Bennett,* for appellant.

It may not be well to apply the rigid rule that one driving across a street-railway track must stop, look and listen, as when crossing the tracks of a steam railway. In these times, when electricity, as a motive power, has taken the place of the horse, and rapid transit is demanded by the public and required by the city ordinances, a teamster, about to drive a four-horse team, thirty-eight feet long, and hauling a load weighing six tons, across a street railway track,

should use his senses, and at least look for its approach when there was nothing to hinder his looking. This rule ought to be applied by the court and made universal, instead of being left to a jury as their honesty, intelligence, prejudice or ignorance may dictate. *Carson* v. *Federal St. & P. V. P. Ry. Co.*, 147 Pa. St. 219; *Ehrisman* v. *East Harrisburg C. P. Ry. Co.*, 150 Pa. St. 180; *Wheelahan* v. *Philadelphia Traction Co.*, 150 Pa. St. 187; *Thomas* v. *Citizens' Pass. Ry. Co.*, 132 Pa. St. 504; *Ward* v. *Rochester Electric Ry. Co.*, 17 N. Y. Supp. 427; *Wood* v. *Detroit City St. Ry. Co.*, 52 Mich. 402; *Chicago West Div. Ry. Co.* v. *Bert*, 69 Ill. 388.

The respondent was guilty of contributory negligence, which caused or assisted in causing this accident. Before he drove upon Washington Avenue, he saw this car approaching, and knew that it was about to pass over the very point towards which he was directing his team. And yet, without excuse of any kind, he urged his long, slow-moving team, with its heavy load, directly into the path of the car; driving, in so doing, between sixty and seventy feet, at the rate of about two miles per hour, without either looking or listening, when, by doing either, he could have discovered the approach of the car. There can be no reasonable inference drawn from such conduct other than that of negligence on his part. The fact that he had full knowledge of the track and grade, and that the car was approaching near by, before he drove upon the track, distinguishes this case from that of *Shea* v. *St. Paul City Ry. Co.*, 50 Minn. 395.

*Merrick & Merrick* and *H. H. Merrick*, for respondent.

It was the undoubted duty of the plaintiff to use ordinary care in attempting to avoid injury, and whether he did use such care was a question for the jury to decide. When his team reached Washington Avenue the car had not reached the crossing at Twelfth Avenue, a block away. The crossing was free and he not only had the right of way, but had the right to presume that the defendant, having a full view of his team, and knowing that he was crossing, would not run its car against him. A traveler upon the public street, where electric cars are run, is not required to exercise the same care and precaution that is required of persons driving across a railroad track. *Shea* v. *St. Paul City Ry. Co.*, 50 Minn. 395.

There is very little law in the case. The questions are those of

negligence, and were for the jury under all the facts and circumstances surrounding the transaction. They found the defendant negligent, and that the accident or injury occurred through such negligence, and that plaintiff was not guilty of contributory negligence. These were questions purely of fact, to be determined by the jury from all the evidence in the case. *Lynam* v. *Union Railway Co.*, 114 Mass. 83; *Chicago City Ry. Co.* v. *Robinson*, 127 Ill. 1; *Adolph* v. *Central Park, N. & E. Riv. R. Co.*, 76 N. Y. 530.

The introduction of the electric car as a motor power upon our public streets and avenues, and the great frequency of accidents by reason of collisions with travelers and their vehicles, seem to call for a plain statement of the law as to the relative rights of these parties in the public streets.

GILFILLAN, C. J. The witness Walden showed himself competent to state within what distance an electric railway car going at the rate of fourteen miles per hour (at which rate some of the evidence indicated the car which injured plaintiff was going) can be stopped. He had been conductor on such a car two months, must have seen such cars stopped many hundreds of times, when going at as high a rate of speed as they ordinarily attain, and was at the time conductor on the car which did the injury. It must be presumed that he was an ordinarily observant man, and, if so, he must have been able to express a pretty accurate opinion on the point.

The evidence made a fair case for the jury, both as to the negligence of the defendant and the contributory negligence of the plaintiff; so that the 3d, 4th, and 5th assignments of error are not well taken. And it is the same with the 18th to the 22d, both inclusive, and the 26th and 27th.

Whether, when a jury comes into court, and reports that it cannot agree, it shall thereupon be discharged, or shall be again sent out to deliberate further upon the case, is in the discretion of the trial court; and, before this court could order a new trial because of the jury having been sent out again, clear abuse of discretion, resulting in prejudice to the party complaining, would have to appear. Nothing of the kind appears in this case.

There was no impropriety in the court urging upon the jury to use all reasonable efforts to come to an agreement, and stating, as a

reason why they should do so, that the case was an expensive one to try, both to the county and the parties.

The court below, in its general charge, in connection with some requests to charge, given and not excepted to, stated clearly and concisely the rules of law applicable to the respective rights of the parties upon the street, and the duty of each in respect to care in making the crossing, and the matter of negligence or absence of negligence on the part of either or both the parties. The only objection to the general charge, insisted upon in appellant's brief, is to a part where the court, after stating the degree of care required of each of the parties, said: "If two teams collide in the street, you must determine by the same rules whether they were using reasonable care towards each other, and, if not, who is to blame." The only suggestion in the brief, of error in this, is that there is a difference between an electric car, running on a fixed track, and a team able to turn to the right or left. That is an important consideration when at the time of the collision the car and other vehicle are passing along the same streets, and the question is which ought to have made way for the other. But the collision in this case was at a crossing, and there is no question which ought to have turned to the right or left to let the other pass. Requiring of those in charge of an electric car at a street crossing the same degree of care as is required of the drivers of other vehicles is not stronger than was laid down in *Shea* v. *St. Paul City Ry. Co.,* 50 Minn. 395, (52 N. W. Rep. 902,) where it was said: "There is no modification or exception that relieves a street-railway company from exercising at least as much care to avoid collisions with other vehicles as the owners of the latter are required to exercise in order to avoid collisions with the cars." So that the degree of care required of a street-railway company at a crossing, by the clause quoted from the charge, to wit, that required of the driver of any other vehicle, was not overstated.

There were numerous requests to charge, some of them very long. Those on the part of the appellant take up over five pages of the paper book. There is a growing tendency—not to be encouraged, we think—on the part of attorneys trying causes, especially those where the fact to be found (such, for instance, as negligence) is to be determined upon the consideration of numerous facts and cir-

cumstances proved, to make long requests, instructing the jury what effect they are to give to one or more of such facts and cir- cumstances in arriving at a conclusion on the principal question. It is frequently, perhaps generally, unsafe to give such requests, as it may induce the jury to consider unduly the facts and circum- stances specified, and leave out of account others that may be enti- tled to materially modify their effect.   Several of appellant's re- quests, which the court refused, were of this character.   An illus- tration of it is afforded by its ninth request, which was, in substance, that if, when plaintiff first came along Eleventh, to cross Washing- ton, he saw the car approaching, and knew it would cross the path along which he was moving, and he drove his team along such path, and did not again look until such interval had elapsed that the car was too near to avoid collision, and if, during such interval, had he looked, he could have avoided the collision, he was guilty of negligence.

This leaves out very important circumstances, which, on the question of his negligence, the jury were to consider:   First, the distance the car was from him when he saw it; second, at what rate of speed he had a right to suppose it was approaching.   Sup- pose, when he saw it, the car was so far away that if it came at the usual rate of speed he could have easily passed before the car reached the crossing.   Certainly, in such case, it would not be negligence *per se,* as the request assumes, to cross without looking a second time.   The fourteenth request has precisely the same fault.

When the court, in its general charge, states fully, correctly, and clearly the general rules that are to control the jury in their deliber- ations on the facts, whether it will call their attention, and, if so, to what extent it will call their attention, to particular facts and cir- cumstances tending to establish the principal fact, such as neg- ligence, is in the sound discretion of the court.   It will not be error to decline to do it at all, though, if it do it in such a way as to mislead the jury, it will be error.   Of course, where the fact proved is conclusive upon the fact to be found, as proof of an attempt to cross a steam railway without looking or listening, when there is nothing to prevent the party looking or listening, and by doing so he can avoid the danger, is conclusive of his negligence, the court must so instruct the jury.

The appellant's 11th, 12th, and 13th requests were merely the application, to particular facts and circumstances specified, of the rules which the court had, in its general charge or in requests given, stated to the jury, and it was proper to leave it to them to make the application.

The giving of plaintiff's fourth request is assigned as error. That request comes, at least, very near to being obnoxious to the criticism we have made upon several requests on the part of the defendant, and it is necessary to consider if it could have misled the jury. It may be divided into two parts,—the first relating to the question of plaintiff's negligence; and the second, to that of defendant's negligence. The first part is the proposition that if, when plaintiff was about to cross, the car was not on that portion of the street over which he attempted to cross, and was not threateningly near or threateningly approaching the same, or if there was nothing to warn the plaintiff of its approach, or of the rate of speed at which it was approaching, he might lawfully drive across said track. The objection to this part of the request is that it ignores the conceded fact in the case,—that he saw the car as he approached the crossing, from which it is claimed that warning of the car's approach was unimportant. As he was about to cross he saw the car just coming off of Twelfth avenue, nearly a block away from him, and there was no evidence that he saw it again till he was already on the track, and it was too late for him to avoid a collision. The request is to be understood, and the jury must have understood it, with reference to that situation. If he had no other notice of its approach than having seen it a block away, and no warning that it was approaching at such a rate of speed that he could not safely attempt to cross, he had a right to do so, unless he was bound, seeing it at that distance, to stop till it passed. But, as held in the *Shea* Case, a car on a street railway has not, as, from the necessity of the case, has a train on an ordinary steam railway, a priority of way at the crossing. Of course it would be negligence to attempt it when one had reason to believe that the car cannot be controlled or checked so as to avoid a collision before he gets across. But, with the uncontradicted evidence in the case as to the distance within which the car could be stopped, one seeing it nearly a block away, as he was about to go upon the crossing, would not have any reason

to suppose it dangerous. There was no error in that part of the request. After what we have stated above from the request, it continued: "And if, in the exercise of ordinary care, as a prudent person, in so doing, he was injured through the negligence of the defendant in." Then follows the specification of acts or neglects which the court, in effect, charged would be negligence. The first of these, to which attention is called by appellant's brief, is: "If said car was running at a high and dangerous rate of speed." There can be no question that, upon much-traveled streets in a city, that would be negligent. The second is: If the person in charge "was not then on the lookout, and did not then have his car under control; did not use the proper means or necessary means to stop said car, and avoid such collision." What is thus indicated as the duty of one in charge of such a car is not higher than would be required of an ordinarily prudent person in propelling through the thronged streets of a city so dangerous a vehicle as an electric car. The neglect of that duty would be negligence.

The damages allowed were large, but, in view of the injuries sustained by plaintiff,—severe, lasting, and liable to terminate fatally,— we do not consider them excessive.

Order affirmed.

(Opinion published 55 N. W. Rep. 742.)