# LAURA WEISS v. GREAT NORTHERN RAILWAY COMPANY.[1]

November 15, 1912.

Nos. 17,802—(53).

**Questions for jury.**

In an action for injuries received by a pedestrian who was struck at night by one of the defendant's engines at a grade crossing, evidence considered, and *held* sufficient to take the case to the jury upon the question as to whether the headlight of the engine was lighted, and also upon the ultimate issues as to negligence on the part of the defendant and contributory negligence on the part of the plaintiff.

**Charge to jury.**

Instruction as to the duty of the engineer to give warning upon discovering the plaintiff in a position of peril, considered and *held* not reversible error.

**Damages.**

Damages held excessive.

Action in the district court for Meeker county to recover $15,000 for personal injuries. In its answer defendant alleged that plaintiff's injuries were caused by her own negligence in not exercising care to ascertain whether trains were approaching. The reply was a denial of that allegation. The case was tried before Powers, J., who denied defendant's motion for a directed verdict and a jury which returned a verdict in favor of plaintiff for $7,500. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed, on condition plaintiff consent to a reduction of the verdict to $5,500.

*W. L. Clift, J. D. Sullivan* and *N. D. March,* for appellant.

*Ernest W. Campbell, F. E. Latham* and *C. A. Pidgeon,* for respondent.

[1] Reported in 138 N. W. 423.

PHILIP E. BROWN, J.

Action to recover damages for personal injuries sustained by the plaintiff, in colliding with one of the defendant's trains on October 28, 1910, at a street crossing in the city of Litchfield, and in which she obtained a verdict for the sum of $7,500. This is an appeal by the defendant from an order denying its alternative motion for judgment in its favor or for a new trial.

The defendant's railway traverses Litchfield in an easterly and westerly direction, crossing Sibley and other avenues west thereof. The business and the larger portion of the residence section is located north of the defendant's right of way and tracks, while to the south thereof is situate the smaller part of the city. Sibley avenue, the main thoroughfare, runs north and south, has a sidewalk on each side of its roadway, and crosses the defendant's right of way and tracks about fifty feet east of the defendant's depot. The plaintiff, a young lady about twenty-three years of age, had resided for many years on this avenue, some two and a half or three blocks south of the said station, and was thoroughly familiar with the railway crossing, tracks, depot, buildings, and grounds of the defendant, and also with its custom of signaling by whistling one or more times upon the approach of its trains to the various streets which its tracks crossed, including Sibley avenue. About 7:30 o'clock in the evening of the day of the accident the plaintiff walked from her home, proceeding north, along the sidewalk on the east side of Sibley avenue, and, on arriving at a point about one and one-half blocks south of the defendant's tracks, heard a rumbling sound, but was not then certain that it was produced by a train. She became certain, however, that the noise referred to was made by a train approaching from the west, when she was about a block from the crossing. Nevertheless, she continued her journey, and just prior to stepping upon the tracks at the crossing she observed several persons on the opposite side of the street crossing over the tracks from the north to the south side, and when she was almost over the tracks she was struck by some portion of an engine approaching from the west, whereby she suffered the injuries complained of.

The matters stated above are uncontroverted. The plaintiff al-

leges several acts of negligence in her complaint, including the running of the train through the city at excessive speed, the failure to give either the customary or statutory signals of approach to the crossing, by bell, whistle, or otherwise, and also that the headlight on the engine was unlighted. Furthermore, she claims that the evidence establishes each claim of negligence charged. All of these allegations and claims the defendant denies. The defendant, however, concedes that, if the headlight of the engine was unlighted at the time of the accident, such fact would constitute negligence on its part and we deem such is, in any event, the law. A consideration of the testimony, especially those portions detailing the physical facts, taken in connection with the instructions given, which must be taken to be the law of the case so far as the plaintiff is concerned, leads to the conclusion that the verdict rendered can in no event be sustained, unless the evidence adduced concerning the question of the headlight being unlighted at the time of the accident was sufficient to carry the case to the jury on this point. We adopt this view because we deem it clear that in the event of a determination that the evidence on this question was insufficient to sustain a finding in accordance with the plaintiff's contention, then the plaintiff must be held to have been guilty of contributory negligence, as a matter of law, in crossing the tracks under the circumstances disclosed. Was, then, the evidence sufficient to sustain a finding that the headlight of the locomotive was unlighted when the plaintiff was injured?

This question is so connected with the defendant's contention that the plaintiff was guilty of contributory negligence under the circumstances above indicated, that for convenience we will consider them together. And in this connection it should be remembered that the burden rested on the plaintiff fairly to satisfy the minds of the jurors as to the correctness of her contention in this regard, and that the same burden rested upon the defendant to establish contributory negligence on the part of the plaintiff, and furthermore that the elementary rule must be applied that, before the court can declare either the existence or nonexistence of negligence as a matter of law, the proof must be such that reasonable minds could not draw different conclusions concerning the presence or absence of due care therefrom.

It is neither practicable nor advisable to state all of the evidence bearing upon these questions. Nor are we required to discuss the evidence for the purpose of demonstrating the correctness of the trial court's action. Demaris v. Rodgers, 110 Minn. 49, 124 N. W. 457; Prahl v. County of Brown, 104 Minn. 227, 116 N. W. 483. The following is, we think, a fair summary of the evidence pertinent to the present inquiry, when coupled with the facts already stated.

The center of the defendant's station is about two hundred and twenty-five feet from the east side of Sibley avenue, where the accident occurred, and before passing onto the track near the point where she was struck the plaintiff could have seen the headlight of the approaching engine, had it been lighted, for a long distance, and it appears in this connection that her eyesight and hearing were normal. The night was very dark, and a high wind was blowing from the northwest. There was evidence sufficient to show that neither the street near where the accident occurred nor the defendant's right of way was lighted, and that there were no lights in the defendant's depot or grounds. The plaintiff, an intelligent young woman, testified that she saw no headlight or train approaching, though she was mindful of the fact that one was coming from the west, and continued to look therefor up to the time she was struck, and that she heard no bell or whistle except one sharp blast immediately before she was struck. Other witnesses traversing the same sidewalk a short distance behind her heard no bell or whistle except a whistle for the station and three sharp blasts simultaneously with the accident, and did not see the accident, the latter fact apparently due to no other reason than the absence of light, though they did see the train pass the crossing and noticed that a dead engine was a part of the load. The engineer testified that he first saw the plaintiff when his engine was about the middle of the depot, and when she was from twenty to thirty feet south of the track, towards which she was walking, according to his estimate, "medium," with her head somewhat down, and that he last saw her when she stepped into the light of the headlight—which, according to his testimony, shone over the track and sidewalk to a considerable extent,—and attempted to cross the track,

but he did not see the engine strike her.  The engine messenger, who was in the cab of the engine, testified that he saw the accident, but could not see whether it was a man or a woman that was struck, or what part of the engine struck the plaintiff.  The fireman testified that he lit the headlight of the engine at the station west of Litchfield, and that when the train stopped after the accident, about two thousand feet east of the crossing, he went to the front of the engine to ascertain the condition of the headlight, and found it still burning, and other employees of the defendant testified to the effect that the headlight was lighted.  Its employees also testified that the train made a great deal of noise in approaching the station, which evidence was corroborated by other witnesses, and that the usual and statutory signals, by whistle and bell, were given on approaching and passing through the city, including three sharp blasts just prior to the accident.  The employees estimated the speed of the train at from ten to fifteen miles an hour, while the plaintiff's witnesses estimated it at twenty.  It also appears that two small "classification" lights were burning on the front of the engine.

Each case of this kind must be determined upon its own facts, and after a careful consideration of all the evidence in this case, in connection with the argument made and the authorities cited by the defendant, we cannot hold that the jury were not justified in believing the plaintiff's version of the accident.  Nor can we say that, because other witnesses having a side view of the train saw it pass the crossing, the plaintiff, from her viewpoint, must have seen it as it approached.  True it is that this approaching train must have made considerable noise, but it should be remembered that a high wind was blowing, which might easily have interfered with the plaintiff's hearing it, and that it is difficult, if not impossible, to determine how far a train is distant from its noise alone.  We are asked to hold that the plaintiff, being aware that a train was approaching from the west, should not have attempted to cross the track, even if she heard no signals and saw no lights, because, it is argued, the use of signals and lights is principally to warn persons of approaching trains, and hence their absence cannot be taken into account by one

who knows that a train is coming. Of course the knowledge that a train is approaching is an important circumstance to be considered, together with other circumstances, on the question of contributory negligence, but we cannot hold that under the evidence in this case the plaintiff must be deemed to have been guilty of such negligence simply because of such knowledge. The main conflict in the evidence concerns the headlight. To determine the question adversely to the plaintiff's claim, we would have to hold that the plaintiff was either entirely faulty in her recollection of the occurrence or that she testified falsely. This, we think, would invade the province of the jury. The circumstance of the engineer's seeing the plaintiff so short a period before her injury, the testimony of the engine messenger that he could not determine what part of the engine struck the plaintiff, or even whether it was a man or a woman that was struck, taken in connection with the testimony of the witnesses who were walking behind the plaintiff on Sibley avenue, to the effect that they did not see the accident, though in the darkness the headlight, if lighted, would naturally have created considerable light at the place of the accident, constitutes strong corroboration of the plaintiff's version, and makes the question one for the jury.

In reaching this conclusion, we have not overlooked the written statement made by the plaintiff on the day after the accident, at the instance of an employee of the defendant.

In several respects this case is similar in its facts to Knudson v. Great Northern Ry. Co. 114 Minn. 244, 130 N. W. 994, which, generally speaking, is controlling here.

The court instructed the jury among other things, as follows:

"If you should find from the testimony that the engineer did discover the plaintiff when the train or engine was some one hundred or one hundred fifty feet west of the crossing, and that he discovered that the plaintiff at the same time was not observing the train, and apparently did not see or notice the train, but was approaching the railway track and crossing as if unconscious of the approach of the train, then it would be the duty of the engineer to immediately give signals or warning that he might make known to her, if possible, the

near approach of the train. And if you find that condition of things and he did not do so immediately, it would be negligence on the part of the engineer and the defendant, as the engineer was its servant."

The defendant complains of this instruction, but we find no reversible error therein.

The defendant contends that the amount of the verdict is excessive, that it was not justified by the evidence, and was the result of passion and prejudice on the part of the jury. The plaintiff was earning $35 per month at the time of the accident, and it appears that up to the date of the trial, June 14, 1911, she was unable to perform any services, and that the probabilities were that such condition would continue for a considerable period. The fact that she was severely injured by the accident and was subjected to much physical and mental suffering, cannot be gainsaid. But we have examined the record with care on this question, and, while realizing that it is a delicate matter to interfere with the determination of the jury in this regard, we hold that the evidence tending to show the likelihood of the plaintiff's complete recovery is so convincing that under the instructions given the verdict rendered cannot stand.

Ordered, therefore, that a new trial of this action be granted unless the plaintiff within twenty days next after the filing of the remittitur in the district court files therein her consent to a reduction of the verdict to $5,500, in which case judgment will be entered therein for the amount of the verdict as thus reduced, together with interest thereon from the date of the verdict.