DAVID KELLEY v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.[1]

February 14, 1919.

No. 21,092.

**Master and servant — personal injury — issue of contributory negligence.**
    1. The determination of the issue of contributory negligence, by a jury, cannot be disregarded, unless the proof was such that reasonable minds could not draw therefrom different conclusions concerning the presence or absence of due care.

**Same — notice to freight conductor of cinder pile.**
    2. In the absence of evidence tending to show that a railway freight

[1]Reported in 170 N. W. 886.

conductor was personally connected with, or observed, the rough handling of a car loaded with cinders, in charge of his train crew, notice will not be imputed to him of the fact that cinders leaked from the car as a result of such handling.

**Same — riding on pilot step — negligence.**

3. A bulletin issued by a railway company, admonishing its employees not to ride on the pilots of engines "more than is absolutely necessary," does not, as a matter of law, make it an act of negligence for one of them to ride on a step fastened to the pilot while the engine is headed towards a car to which it is to be coupled.

**Same — stepping from engine to station platform.**

4. Respondent, an experienced railroad man, was not negligent, as a matter of law, in attempting to step from an engine to a station platform, while the engine was running 12 or 15 miles an hour, or in failing to observe a pile of cinders on and adjacent to the platform, under the circumstances disclosed by the evidence.

**Jury presumed to obey instructions.**

5. It is presumed that a jury observes the instructions given by the court.

**Damages.**

6. There is no standard by which damages for the loss of an arm may be measured. Unless the amount awarded by the jury is so large that the trial court abused its discretion in permitting the verdict to stand, this court will not interfere.

**Verdict not excessive.**

7. The verdict is not excessive.

Action in the district court for Hennepin county to recover $50,000 for injuries received while in defendant's employ. The answer among other matters set forth the terms of defendant's Bulletin No. 133, part of which is quoted in the seventh paragraph of the opinion. The case was tried before Steele, J., and a jury which returned a verdict for $13,-154. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Barrows, Stewart & Metcalf,* for appellant.

*George C. Stiles, D. C. Edwards* and *F. M. Miner,* for respondent.

LEES, C.

On May 1, 1917, respondent, while employed by appellant as conductor on one of its freight trains, was engaged in switching cars at Bayard, Nebraska, a station on appellant's railroad. He attempted to alight from the front end of the engine as it was running past the station platform at a speed of from 12 to 15 miles per hour, stepped into a pile of fine cinders lying along the track and extending over the platform, lost his footing, fell between the platform and the track, was dragged several feet before the engine was stopped and lost his left arm, which was severed a few inches from the shoulder. His head, side and legs were bruised severely, but no permanent disability resulted therefrom.

He was 32 years old, had been in the railway service for many years, and was not trained to follow any other occupation. He was earning from $1,500 to $1,600 per annum when injured. He can no longer follow railroading. The extent of his reduced earning capacity does not appear.

Alleging negligence on the part of appellant in failing to remove the pile of cinders before he was injured, respondent brought this action and recovered a verdict for $13,154. There was a motion for a new trial, which was denied, and this appeal followed.

The evidence showed that a car loaded with "front end" or fine cinders had been in a train in charge of the respondent on the day previous to the accident; that it was set out of the train at Bayard and roughly handled by the train crew, and that the pile of cinders leaked from it while it was standing on the main track beside the station platform. At that place the platform was composed of packed cinders of the same color as those in the pile. The engine, at the time of the accident, was on the way to switch some cars east of the station and the head end faced the east. Respondent stood on a step or foot board fastened to the lower part of the pilot, and was stepping off to get his switching list at the station, when he was injured.

Counsel for appellant, in their brief, state that "it is the sole claim of the appellant that the verdict was so excessive as to indicate passion and prejudice and that it is not justified by the evidence or by the law." In support of this contention, the following points are made: (1) Respondent was guilty of negligence in law in permitting the cinders to escape

from a car under his control and to fall and be upon the track and station platform, in riding upon the engine pilot and in attempting to alight therefrom at the time of the accident; (2) the verdict itself indicates that the jury did not observe the charge of the court and reduce the assessed damages by reason of respondent's contributory negligence.

1. Decision of the question of whether the first contention is sound requires the application of the familiar rule, that the jury's determination of the issue of contributory negligence cannot be disregarded, unless the proof was such that "reasonable minds could not draw different conclusions concerning the presence or absence of due care therefrom." Weiss v. Great Northern Ry. Co. 119 Minn. 355, 138 N. W. 423. No case has been called to our attention holding that it is the duty of a railway conductor or foreman of a switching crew to acquaint himself with all the movements made of cars under his control. It is a matter of common observation that in switching cars they are often handled roughly, the fault lying sometimes with the engineer and sometimes with the switchmen or brakemen. As a result of rough handling, a car filled with fine cinders may begin to leak, and, if the leak is not stopped, a pile of cinders may be formed, as was the case here. To impute notice of the leak and its consequences to respondent, in the absence of evidence tending to show that he was personally connected with the rough handling of the car, or, if not so connected, that he observed it, would be going too far. We find no such evidence in the record and cannot hold respondent guilty of contributory negligence as a matter of law on this ground.

Respondent was not absolutely prohibited from riding on the pilot of the engine by the bulletin introduced in evidence. It states that trainmen "should not use the pilots of engines for riding on any more than is absolutely necessary, as we have had several accidents recently when engine was in motion due to brakeman attempting to get on pilot." It is quite true, as argued by appellant's counsel, that respondent's explanation of why he was riding on the pilot at the time of the accident is rather lame. Doubtless he might have ridden on the platform of the caboose, which was behind the engine at the time, and possibly if he had ridden there he could have done his work as well as he could do it

from his position on the pilot. His selection of the place where he would ride was, however, a matter of judgment. He was not forbidden to ride on the pilot, if it was absolutely necessary. Who was the judge of the necessity? We think it was respondent himself.

A photograph of the front end of the engine is contained in appellant's brief. It shows that the engine was equipped with a foot board or step on the side of the pilot and just above the rails, and with a draw bar and coupler just above the pilot. These appliances must have been provided for the use of the trainmen in running up to cars and coupling the front end of the engine to them. The step was an invitation to a trainman to ride upon the pilot. It was safe for him to stand there while the engine was in motion in switching operations. By riding on the pilot he would be next to the car to be switched when the engine came up to it. We would not be justified in holding respondent guilty of contributory negligence as a matter of law because he rode there on the occasion in question.

There is more weight to the contention that respondent should not have attempted to alight from the moving engine without taking observations more carefully than he did to ascertain whether the place at which he chose to alight was a safe place for that purpose. It was light. The pile of cinders must have been in plain sight had he looked towards it as he approached. He was under no necessity to alight at the spot chosen. There was nothing to distract his attention. He might have signalled the engineer to stop, gotten off, gone into the station, picked up his switching list, come out and gotten upon the engine again and gone on to the cars to be switched without loss of time. His statement that he got off as he did to gain time is not convincing, for he would have been obliged to walk from the station to the cars after he got his list if the engine did not wait for him. However, these were all matters for the consideration of the jury to whom they might properly be addressed in argument. There was evidence that it was not dangerous for an experienced brakeman or switchman to get off an engine running from 12 to 15 miles per hour past a station platform and that it is done many times daily with safety.

Respondent testified that he neither saw nor knew of the pile of cinders until after the accident. There is no proof to the contrary.

Whether this testimony should be credited or rejected as unworthy of credence was within the exclusive province of the jury. If they believed it, respondent was not guilty of contributory negligence in the respect now under consideration. On the whole, we conclude that appellant's contention that respondent was guilty of contributory negligence as a matter of law cannot be sustained.

2. Since the jury was free to find either way on the question of con-tributory negligence, little is left of the second point on which a reversal is sought. The jury was properly instructed as to the application and the effect of the Federal Employer's Liability Act of 1908, and plainly told to diminish the damages, if they found respondent guilty of contributory negligence. It is presumed they obeyed their instructions. Pierce v. Wagner, 29 Minn. 355, 13 N. W. 170; Hirsch v. Bayne, 112 Minn. 68, 127 N. W. 389, 21 Ann. Cas. 761. We must view the verdict in the light of that presumption. If the jury found that respondent was free from negligence, the verdict is not excessive. "This court has not and cannot set a standard as to the limit of damages to be awarded for loss of an arm or a leg." Gibson v. Chicago G. W. R. Co. 117 Minn. 143, 134 N. W. 516, 38 L.R.A.(N.S.) 184, Ann. Cas. 1913C, 1263. A great number of cases, where the damages awarded for the loss of an arm were held to be excessive or not excessive, are collected in the note to Padrick v. Great Northern Ry. Co. L.R.A. 1915F, 53-57. An apt statement of the rule to which we are subject in dealing with this particular question was made by Bunn, J., in Gibson v. Chicago G. W. R. Co. supra. He said:

"The amount is greater than we would have awarded. But the amount was not so exorbitant as to shock the sense of the trial court, and the question before us is still narrower: Is the amount so large that it clearly appears therefrom that the trial court abused its sound discretion in permitting the verdict to stand?"

There is high authority sustaining the right of both trial and appellate courts to cut down the amount of a verdict in a case where it is evident that the jury disregarded an instruction to diminish the damages in the proportion that plaintiff's negligence bore to the total negligence. Union P. Ry. Co. v. Hadley, 246 U. S. 330, 38 Sup. Ct. 318, 62 L. ed. 751; Pennsylvania Co. v. Sheeley, 221 Fed. 901, 137 C.C.A. 471. The diffi-

culty arises when it is sought to show that the jury disregarded the instruction. In some instances it has been solved by requiring special findings, fixing the full damages and separately the amount by which such damages should be diminished if plaintiff was not free from negligence. When that practice is followed, courts have facts and not presumptions to deal with and may weigh the verdict aided by the revealed conclusions of the jury. In the present case there is no certainty that the jury was of the opinion that the respondent was negligent and, of course, their verdict cannot be interfered with on a mere conjecture.

Order affirmed.