# HOWARD BRADLEY v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

December 26, 1924.

No. 24,310.

**When all things are equal, vehicle on the right has right of way even against street car.**

A street car collided with a truck, driven by plaintiff, which approached the street intersection from the right hand side of the street car, and when plaintiff was about 60 feet from the point of intersection he looked and saw the street car about 150 feet therefrom. Record examined and *held*: (1) That under section 22, chapter 119, p. 164, L. 1917, a street car is a "vehicle;" (2) that plaintiff had the right of way and defendant's failure to yield to his right of priority justified the jury in finding negligence; (3) that the question of plaintiff's contributory negligence was for the jury, and (4) that the damages awarded were not excessive.

Action in the district court for Hennepin county to recover $17,500. The case was tried before Fesler, J., and a jury which returned a verdict for $12,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Ralph T. Boardman* and *John F. Dulebohn,* for appellant.

*Devaney & Edwards* and *R. V. Gleason,* for respondent.

WILSON, C. J.

A street car operated by defendant collided with a truck driven by plaintiff at the intersection of East Hennepin avenue and East Island avenue in Minneapolis. East Hennepin runs east and west; East Island intersects, approaching from the north. It does not cross. Plaintiff traveled southerly onto East Hennepin and the street car was going west. Plaintiff sustained injuries for which he was given a verdict for $12,000. Defendant has appealed from an order denying its alternative motion for judgment notwithstand-

[1]Reported in 201 N. W. 606.

ing the verdict or for a new trial. Defendant's appeal presents three questions, namely: Defendant's negligence, contributory negligence, and excessive damages. We will consider the first two questions together.

That a street car is a "vehicle" within the meaning of section 22, chapter 119, p. 164, L. 1917, is settled. Syck v. Duluth Street Ry. Co. 146 Minn. 118, 177 N. W. 944. But in the absence of such holding the street car would not have the right of way. Shea v. St. Paul City Ry. Co. 50 Minn. 395, 52 N. W. 902.

There is evidence to justify the jury in finding that plaintiff's view to his left was obstructed by a large sign on the corner lot but some distance from the corner; that on his right was a hotel built up to the sidewalk line on the corner; that the truck was going from 8 to 12 miles per hour, and going along at a set speed for 75 feet from the point of impact; that the street car was going 18 to 25 miles per hour; plaintiff had his truck under control and could have stopped in 10 feet; that plaintiff was familiar with the intersection; that the street car usually slowed down for the intersection, which plaintiff knew; that it did not slow down for plaintiff; that the street car was about 70 feet east of the east side of East Island avenue when the motorman saw the truck; that plaintiff saw the street car when he was about 60 feet from the point of intersection and when the street car was about 150 feet therefrom; that plaintiff intended to make a left hand turn on to East Hennepin; that he stayed to the right of the center; that the traffic was heavy; that plaintiff saw nothing unusual in the movements or speed of the street car, and it was then presumably going at the usual speed of about 15 miles per hour; that the rear wheels of the truck were on the south rail when the collision occurred and the truck by its own momentum and the blow landed on the sidewalk on the southerly side of East Hennepin facing northwesterly. Plaintiff was thrown to the pavement and injured.

Plaintiff had the right of way. True, the law of the road is not unyielding. It does not invariably give the vehicle to the right of the intersection the preference, but, when all things are substantially equal for both parties, the one on the right has the pre-

ference.  He may have the preference when all things are not sub-
stantially equal.  The right of way does not permit a person to use
the street arbitrarily or irrespective of other conditions present.  It
is a rule of convenience for the purpose of standardizing rights and
duties at street intersections.  "It does not absolve one having the
prior right from independent acts of negligence at such crossings."
Rosenau v. Peterson, 147 Minn. 95, 179 N. W. 647; Carson v. Tur-
rish, 140 Minn. 445, 168 N. W. 349, L. R. A. 1918F, 154; Gibbs v.
Almstrom, 145 Minn. 35, 176 N. W. 173; Anderson v. A. E. Jenny
Motor Co. 150 Minn. 358, 185 N. W. 378.  In this case when plain-
tiff saw the car it was $2\frac{1}{2}$ times as far from the point of intersection
as was the plaintiff.  This gave plaintiff the benefit of the prefer-
ence and defendant's failure to slacken its speed in recognition of
plaintiff having the right of way was sufficient to justify the jury
in concluding that defendant was negligent.  Under the circum-
stances the defendant owed plaintiff the duty of yielding to him
the right of way.  Its violation of this duty was negligence.

Was the plaintiff as a matter of law guilty of contributory negli-
gence?  The parties were in a congested district.  Traffic was
heavy.  Plaintiff was required to give vigilant attention to his right
for approaching vehicles.  This required his attention until he was
within 30 feet of the first rail.  When he saw the street car he might
well assume that defendant would follow its usual practice of slow-
ing down for the intersection, which it did not, and also that de-
fendant would under the circumstances yield to him the right of
way.  He could assume that defendant would observe its duty
toward him up to the time when it appeared that it would not.  The
law did not require plaintiff to presume that defendant would be
guilty of negligence.  Carson v. Turrish, 140 Minn. 445, 168 N. W.
349, L. R. A. 1915F, 154.  There was also a pedestrian in the street.
Circumstances demanded some mental activity.  The truck was
moving toward the point of collision at the rate of 11 to 17 feet
per second, and the street car was possibly traveling at the rate
of 26 to 36 feet per second.  In such a situation plaintiff in the
exercise of due care did not have much time to watch to the left to
guard against the unexpected from a vehicle approaching from that

direction. His primary duty was to know that he had the right of way; and then to perform his duty toward others, if any, to his right and to those, if any, in front of him. Having the right of way, he cannot be expected to continually watch the vehicle on his left in anticipation of negligence on its part. He had a right to assume that it would be properly operated.

As was said in Watson v. Minneapolis St. Ry. Co. 53 Minn. 551, 55 N. W. 742, there was nothing to indicate that his vehicle would not be seen and his priority of right recognized. Plaintiff here has the support of the right of way which Watson did not have as a matter of law. The suggestion that plaintiff should have looked at the street car a second time before going upon the track to protect himself from contributory negligence as a matter of law is sufficiently answered by Hillstrom v. Mannheimer Bros. 146 Minn. 202, 178 N. W. 881, wherein the court said:

"Was plaintiff's failure to look to the west a second time when he would have had a clear view up Selby avenue contributory negligence as a matter of law? In view of the fact that he did look under the circumstances we have detailed and that the jury might properly find that he had the right-of-way and that the truck was driven upon that part of the street intersection where it had no right to be and where plaintiff had no reason to anticipate its presence, we answer the question in the negative."

Under our decisions one is not necessarily guilty of contributory negligence in attempting to cross ahead of a vehicle approaching even from the right. Kunz v. Thorp Fire Proof Door Co. 150 Minn. 362, 185 N. W. 376; Soderberg v. Taney, 152 Minn. 376, 188 N. W. 993. In Armstrong v. Minneapolis A. & C. R. Ry. Co. 153 Minn. 374, 191 N. W. 47, language was aptly used that is appropriate here:

"It is defendant's contention that, considering the evidence as a whole, it conclusively appears that the truck driver was guilty of contributory negligence and for that reason the court erred in denying its motion for a new trial. As a rule, when there is a collision between two motor vehicles after both have entered the danger zone at street intersections, only a few seconds of time separate the

first appearance of danger from its disastrous consequences. Whether a man was negligent in what he did or failed to do under the circumstances presented is a question which the combined knowledge and experience of 12 jurors enables them to determine better than anyone else. Hence, in cases such as this, the verdict of the jury should not be disturbed unless the proof is such that upon no rational basis could reasonable minds draw different conclusions concerning the presence or absence of due care. Weiss v. Great Northern Ry. Co. 119 Minn. 355, 138 N. W. 423; Kelly v. Chicago, B. & Q. R. Co. 142 Minn. 44, 170 N. W. 886. We have considered all the evidence and the arguments of counsel based thereon, and have concluded that contributory negligence on the part of the truck driver was not conclusively proven. We make no analysis of the evidence, for it is not the duty of the court to demonstrate that the evidence was such as to justify the refusal of the trial judge to set the verdict aside. Carver v. Bagley, 79 Minn. 114, 81 N. W. 757; Weiss v. Great Northern Ry. Co. supra."

Again it was tersely stated in Robertson v. Spitler, 153 Minn. 395, 190 N. W. 992, that "drivers at crossings must give and take but with a sensible recognition of the law that gives the right of way to the one approaching from the right."

Of course the rules controlling persons using steam railroad crossings do not apply to persons crossing street railway tracks at street intersections. O'Rourke v. Duluth St. Ry. Co. 157 Minn. 187, 195 N. W. 896.

We have carefully considered the evidence and conclude that contributory negligence did not exist as a matter of law. It was purely a question for the jury, and, having been properly submitted to the jury, their conclusion is controlling. Anderson v. A. E. Jenny Motor Co. 150 Minn. 358, 185 N. W. 378; Lindahl v. Morse, 148 Minn. 167, 181 N. W. 323; Soderberg v. Taney, 152 Minn. 376, 188 N. W. 993; Robertson v. Spitler, 153 Minn. 395, 190 N. W. 992; Primock v. Goldenberg, supra, page 160. The evidence of plaintiff's contributory negligence falls short of being so conclusive that reasonable minds could not differ.

Were the damages excessive and given under the influence of passion and prejudice? Plaintiff was a young man 22 years old earning $27 per week. He was injured June 9, 1923. For 3 months he was confined to his home in bed most of the time, but about on crutches a part of the time. He was then taken to a hospital. He was black and blue on his right side; had superficial wounds on his limbs and body; pains in his chest for 6 weeks; spat blood for 4 months, and had severe pains in his hips. He was wrapped in adhesive tape; could not stand alone and could not move his legs at his hips. At the hospital he was kept in bed for 3 weeks and then placed in a plaster cast from hips to shoulders. This was painful and a new one was applied which covered his body and right leg. He kept this on $2\frac{1}{2}$ months. It was to keep him from moving. Later he was placed in a steel brace with stays in it and he was still wearing this at the time of trial in April, 1924, and was then still in the hospital. At the time of the trial he could sit only on his left buttock or hip with the right leg extended to avoid pain. He has suffered continued pain in the pelvic region. He suffered a definite separation and slight amount of slipping at the base of the right sacroiliac joint. The sacrum was displaced downward. He is disabled for an indefinite time. He will eventually be able to do light work, but will not entirely recover and will never, in the opinion of medical testimony, be able to resume his regular occupation of a truck driver. The learned trial court, in a memorandum says: "The trial was remarkably free from any appeals to passion or prejudice or other conduct too frequently present in personal injury cases. If the court, for injuries such as here claimed, with the duration of the ailment problematical should undertake to reduce the verdict, it could have no legal check to tell it where to stop. Under the testimony of the doctors the amount of the verdict is legally sustained and that is as far as a court should inquire." A most admirable statement in its juridical character and it removes all doubt, if any, as to the presence of passion or prejudice concerning which the record is silent. On this branch of the case there is nothing that permits or calls for our interference.

Affirmed.

STONE, J. (dissenting.)

It is a bit difficult for me to perceive how the driver of an automobile, particularly a slow moving motor truck, can get his vehicle run into by a trolley car at an open street intersection, as the plaintiff did in this case, without himself being guilty of a want of care contributing to the accident. But there is reason for the conclusion that reasonable minds may differ concerning that question. Particularly is the latter true where the truck driver is held to have the privilege of first passage as against the colliding street car. It is on that phase of the case that my view is at variance with that of the majority.

True, it was held in Syck v. Duluth St. Ry. Co. 146 Minn. 118, 177 N. W. 944, that a street car was a vehicle within the meaning of the right-of-way statute. It was so concluded definitely and unequivocally as a matter of statutory construction. There is no question but that the decision is in direct contradiction of the opinion about to be expressed; one which would not be entertained did I not feel that there is an error in the Syck case so clear that the result is beyond the protection of the rule of stare decisis. No rule of property, contract right or procedure is involved, and if error has been made no one will be harmed by correcting it. On the contrary, the law and its proper interpretation and application will be served, and there lies our paramount duty.

The right-of-way statute, so-called, came into our law first by section 22, c. 119, p. 164, L. 1917. Subdivision (2) was thereby added, reading as follows:

"The driver of any vehicle approaching or crossing a street or highway intersection shall give the right of way to any other vehicle approaching from its right on the intersecting street or highway, and shall have the right of way at such crossing over any vehicle approaching from his left on such intersecting street or highway. The provisions of this subdivision shall be applicable in boroughs, villages and cities, except at such street intersections therein where and when a police officer shall be in actual charge of the regulation of traffic at any such intersection of streets."

Of course, this language standing alone very properly could be held to include street cars, but at that such a result would follow only a most literal interpretation, one which would sweep within the scope of the law freight and passenger trains.

It is difficult to find a word in this flexible and sometimes nebulous language of ours with a more expansive meaning than vehicle. Language is a vehicle of thought; a pill a vehicle of medicine, and a dirigible a vehicle of the air. Standing alone, "vehicle" may refer to any one of them. The point is that when seeking to ascertain the meaning of the word it is in any case indispensible to study its context—a necessity given scant consideration and summary dismissal in the Syck case. When a new section is added to an old statute, and its meaning is controlled by a word of such elastic generality of application, it is somewhat appropriate for the judicial mind, in performing its duty of application and interpretation, to give some attention to the rest of the statute, the old body to which the new material is applied. If that process is not followed, the new member is apt to be deprived of its proper articulation and its intended function much imperiled.

The old statute, amended by the addition of the right of way subdivision in 1917, has been a part of our law for a long time. It was sections 1258, 1259, R. L. 1905, which later became the two paragraphs of section 65, c. 235, p. 320, L. 1913, a general rural highway act, the first section of which limited the scope of the law to highways "not included" within the limits of "any city, village, or borough except when highways within villages or cities are specifically specified." The two old paragraphs are these:

"When persons meet on any road or bridge, traveling with vehicles, each shall seasonably drive to the right of the middle of the traveled part of such road or bridge, so that the vehicles may pass without interference."

"The driver of any vehicle passing another vehicle traveling in the same direction shall drive to the left of the middle of the traveled part of the road, and, if such be of sufficient width to permit such passing, the driver of the leading vehicle shall not obstruct the same."

It goes without saying that the statute in that condition could not be stretched to include a street car or railroad train, for the very simple reason that the obvious purpose was to control only those vehicles not running on rails, and therefore having complete liberty of movement over any and all portions of the road.

If, in 1917 or at any other time, it had been the intention of the legislature in adding to this statute another rule, to make the new rule, and that only, applicable to trolley cars, it would not have been left to implication. The purpose would have been stated. For without such a statement, every rule of statutory construction known to legislature or judges would require the new rule to be limited in its application to the old subject matter.

There is nothing in the opinion in the Syck case, nor could anything have been put there, in derogation of the conclusions just stated. Instead of ascertaining the meaning of the legislature from the language of the whole statute as amended, the legislative field was invaded, and the supposed expediency of subjecting street cars to the right of way amendment was gone into. There resulted a holding (none the less remarkable because without the statute neither street cars nor auto had the right of way), which, given logical application, now requires a street car, packed with citizens having a right to proceed without undue interruption, to stop and yield the right of *prior passage* to an automobile, motor-cycle, bicycle, pop-corn wagon, or wheel-barrow approaching the intersection from the right and due to arrive there at about the same time as the street car. It too often subjects the right of the many to the convenience or whim of one person. Before my assent will be yielded to any such result, from the application of the statute, the legislature will have to do much more than it has done in the 1917 amendment of the "law of the road" to make clear a consequence which seems so indefensible.

But it is not upon that ground that this dissent is based. It is upon the single proposition that a street car, locomotive or train, being so clearly *without the scope of the statute as it stood before the 1917 amendment*, should not be considered as within the scope of the statute, as amended, for the simple reason that the legislature

must be taken to have used the word "vehicle" in the third section of the statute in the same sense in which it was used in the first two.

QUINN, J. (dissenting.)
I concur in the dissent of Mr. Justice Stone.