EMMA DRAVES BY HER GUARDIAN AD LITEM v. THE
MINNEAPOLIS & ST. PAUL SUBURBAN
RAILROAD COMPANY.[1]

May 2, 1919.

No. 21,216.

**Carrier — negligence of motorman — question for jury.**

1. The testimony made a case for the determination of a jury, whether

[1]Reported in 172 N. W. 128.

the negligence of the motoneer of an electric railroad passenger car as to speed and signals, upon approaching a place where cars usually stop to receive passengers, was the proximate cause of plaintiff's injuries. The jury could find that such negligence began to operate before plaintiff went to the rescue of her companion and continued until both were struck. That the companion came into danger of death because she was negligent as well as the motoneer, does not necessarily defeat plaintiff's right of recovery.

#### Exclusion of evidence harmless error.

2. The motoneer having fully testified to the distance one of the women, struck by his car, was from the car at different points of time, and as to what he observed of her actions, it was not prejudicial error to exclude an answer calling for the distance he was away from her when he first saw that she was intending to cross the track upon which the car was running.

#### Request to charge jury.

3. Certain requests for instructions which gave undue prominence to circumstances of little or no controlling effect were properly refused.

#### Damages not excessive.

4. The damages awarded are not so excessive that this court should disturb the verdict approved by the trial court.

Action in the district court for Hennepin county by the guardian ad litem of Emma Draves to recover $25,000 for injuries caused by being struck by defendant's street car. The answer alleged contributory negligence on the part of plaintiff. The case was tried before Leary, J., who at the close of the testimony denied defendant's motion for a directed verdict and a jury which returned a verdict for $10,870. Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*R. T. Boardman,* for appellant.

*Larrabee & Olson,* for respondent.

HOLT, J.

Defendant owns and operates a double tracked electric line between Minneapolis and Excelsior. Outside the city and village limits it runs

over its private right of way, except as public highways cross. At designated places along the line, and on signal, the cars stop to receive passengers. One such place is about half a mile east of Excelsior where the highway running north from Christmas lake crosses the tracks and immediately joins the Minnetonka boulevard. South of the tracks and some 20 feet east of the crossing is a small shelter place for waiting passengers. The tracks run practically east and west at the crossing, and the grade is towards the west. Near noon on June 10, 1917, plaintiff and Mrs. Hillman were at this little shelter station for the purpose of taking a car to Excelsior. They heard a car approaching from Minneapolis, and, as it sounded the whistle at the whistling post, about 1,200 feet to the east, the two women started hurriedly to cross the tracks, so as to be on the proper side to board the car. Mrs. Hillman was an elderly, heavy woman, suffering from some infirmity affecting her walk. As a consequence plaintiff got ahead, but, on turning around after having safely crossed, she noticed that Mrs. Hillman was between the two tracks, apparently intending to cross the north track, oblivious to the fact that the car was so swiftly approaching that the attempt to then cross would expose her to extreme danger. Plaintiff claims that, being unable by shouting to apprise Mrs. Hillman of her peril, she stepped back towards the north rail, out of harm's way, as she thought, and reached for her companion to assist her over. She, however, miscalculated the overhang of the car, for it struck both the women, killing Mrs. Hillman instantly and severely injuring plaintiff. The car was brought to a stop some 300 to 550 feet west of the crossing. This action was brought to recover damages. Plaintiff had a verdict, and defendant appeals from the order denying its motion in the alternative for judgment non obstante or a new trial.

The main contention is that the evidence does not sustain the verdict, and hence the court erred when denying the motions for a directed verdict and for judgment notwithstanding the verdict. Defendant's proposition is, that the only possible ground upon which a verdict could be based, under the situation disclosed by the record, is that there was what in law is termed wanton or wilful negligence, but negligence of that character was not pleaded. We may concede that under the rule of Anderson v. Minneapolis, St. P. & S. S. M. Ry. Co. 103 Minn. 224, 114 N. W.

1123, 14 L.R.A.(N.S.) 886, the complaint does not charge wanton negligence. And some doubt may be entertained as to the sufficiency of the evidence to make out that kind of negligence, for there was hardly any appreciable time for action between the moment Mrs. Hillman got into a place where she could be struck by the car and the moment of collision. We apprehend that the negligent acts and omissions of the motoneer, which the jury found to have been the proximate cause of plaintiff's injury, began prior to the moment Mrs. Hillman found herself in danger and continued until plaintiff was struck. The facts are somewhat similar to those in Howell v. Great Northern Ry. Co. 125 Minn. 137, 145 N. W. 804, in that the negligence consisted in an omission to do that which would have prevented another from placing himself in a perilous situation. The jury could find from the evidence that the motoneer saw the women when more than 700 feet from the crossing, at which was a place for receiving passengers; that from their actions he must have been advised that they intended to board his car, and to do so they would undoubtedly think it necessary to cross the track on which he was running; that one of them was slow of movement; that, nevertheless, he neither slackened speed nor gave any warning apprising them that he intended to pass by without stopping and at full speed, and that the speed he was maintaining in approaching the crossing was excessively high. The jury could well find that an ordinarily prudent person in the motoneer's position would have realized the danger of a collision very shortly after he saw the women and would have, by proper precautions, such as reducing speed or giving signals, prevented them from getting into a dangerous position. The jury could also find that he did nothing until the very instant of the collision. They could find that, had the car been run at reasonable speed, plaintiff's efforts to save her companion would not have resulted in her own injury. No useful purpose will be attained by setting out the evidence in detail. Of course, there was testimony upon which finding to the contrary might have been predicated, had the jury seen fit to believe it.

Error is assigned upon but one ruling in respect to the admission of testimony. The motoneer was asked: "What I want to get at is, how close were you to her (Mrs. Hillman) when you discovered that she was going to try to go across ahead of you?" Plaintiff objected because

there was nothing in the question to show what it was he saw that would justify a reasonable man to draw the conclusion. But the statement was also made, that there was no objection to the witness stating how far he was from Mrs. Hillman when she started to run. The court might well have permitted the answer. But we are unable to see that defendant was in any manner prejudiced, for the motoneer located the distance between the car and Mrs. Hillman, when he noticed that she was attempting to hurry or run across from 175 to 200 feet, and was very fully examined as to what he observed as to her movements and the distance from the car at various points up to the collision.

The general charge of the court embodied the principles of law contained in defendant's requests, insofar as applicable to the evidence received. The requests as drawn by defendant were in some respects open to the criticism that emphasis was placed upon some minor circumstance likely to withdraw attention from some controlling fact. For instance request No. 6 is: "The motorman of this car had a right to assume and act on the assumption, that the plaintiff herein, having reached a place of safety, would not suddenly and unexpectedly put herself in a place of danger." The negligence of the motoneer was based principally on the effect of his acts or omissions prior to the moment referred to in the instruction. Plaintiff's sudden approach to a place of danger was to save life and avert the consequences of the motoneer's negligence, and perhaps also of Mrs. Hillman's negligence.

At first blush it might seem that this requested instruction should have been given, viz.: "The plaintiff is not entitled to recover in this case, unless you find, as a fact, under the instructions herein given you, that the companion of the plaintiff, who it is claimed she was attempting to assist, was placed in her position by the negligent act or acts of the defendant company." Strictly speaking the defendant or its motoneer did not place Mrs. Hillman in any position. The negligent acts or omissions which were the proximate cause of plaintiff's injuries occurred before Mrs. Hillman found herself upon the track. The court reiterated the instruction that, unless the negligence charged against defendant was established as the proximate cause of plaintiff's injuries, there could be no recovery. In view of that fact, and the further consideration that there was evidence warranting the jury in finding that, had the speed

not been excessively high, the injury to plaintiff would not have been caused, even though Mrs. Hillman found herself in the position she was through her own fault, it cannot be said that there was error in refusing the instruction requested by defendant.

A. new trial is asked on the ground of excessive damages. Little need be said on that subject. Medical and hospital expenses exceeding $900 were incurred by plaintiff. She sustained a most serious injury. Her doctor testified: "The entire side of the face including the muscles and the skin and small pieces of broken bone had been torn out and laid back over on her ear. The cheek bone had been crushed." The left elbow was out of joint and the radius broken. Her suffering was extremely painful and prolonged. But the most grievous injury seems to have been to the brain tissue. The medical expert on nervous and mental diseases, called as a witness, after testifying to the symptoms of brain injuries of plaintiff, said: "I think it will be a long time before her mental condition is good enough to resume the ordinary occupations of life, and that probably her mental condition and her brain will never be as good as they were before." There was no testimony in anywise disputing this prognosis. We cannot hold the verdict for $10,870 so excessive that this court should interfere.

No other contention of defendant calls for discussion.

Order affirmed.