# JOANNA KRUCHOWSKI v. ST. PAUL CITY RAILWAY COMPANY AND ANOTHER.[1]

April 27, 1934.

No. 29,823.

*C. J. Menz,* for appellant.

*Alfred Joyce, Thompson, Hessian & Fletcher,* and *John J. McKasy,* for respondent.

[1]Reported in 254 N. W. 587.

*HOLT, Justice.*

Plaintiff, as special administratrix of the estate of Joseph Kru-chowski, her husband, sued appellant and one Peter Miller to recover for the wrongful death of her husband. The complaint alleged that appellant in operating its street car between St. Paul and South St. Paul and defendant Miller in driving his automobile negligently, unlawfully, with reckless and wanton disregard for the safety of other users of the street, drove and operated their vehicles at a high and dangerous speed, without proper lookout and control, without proper and lawful lights, and without warning or signal, upon and against plaintiff's decedent, causing injuries from which he died. There was a verdict in favor of defendant Miller but against appellant in the sum of $7,500. From the order denying appellant's motion in the alternative for judgment notwithstanding the verdict or a new trial it appeals.

Shortly after six o'clock on the evening of October 26, 1932, appellant's street car was being run south on Concord street to South St. Paul when, after passing Bircher street, a passenger signaled the motorman that he desired to alight at the next stop, which was Stanley street. Concord street here runs practically north and south below or east of the bluffs. It is a long block between Bircher street and Stanley street, with but one dwelling on the west side of Concord. There are no structures on the east side of the street, which adjoins the tracks of the Chicago, Great Western Railroad Company. Stanley street ends at Concord street. The latter is paved, the double tracks of appellant occupying the center thereof. From the west rail of the westerly or southbound track to the west curb of Concord street is 17 feet. It was drizzling at the time referred to. The street car lights, including the headlight, were turned on. There were no parked cars nor any traffic on Concord street as the street car was passing from Bircher street toward Stanley, except that Miller came up behind at Bircher. The motorman testified that he speeded up to about 25 miles per hour after passing Bircher street, but slowed down when he got a bell from a passenger to stop at Stanley street, and that when about 150 feet from the stop sign he noticed the decedent near the track, waving

toward the car, and saw him step back some three or four feet from the west rail; that he had reduced the speed to ten miles an hour when within ten feet of decedent, and that then Miller's car passed at high speed, struck decedent, and hurled him upon the track in front of the street car. He at once applied the brakes, stopping the street car with a jar, but not until the fender reached decedent, pushing him to the east side of the track. There is no evidence contradicting what has been recited of the motorman's testimony except that of defendant Miller, who thought he was only a foot or so ahead of the street car when his automobile struck something. The evidence does not show that the wheels or any part of the street car wounded or injured decedent. It was, however, stipulated "that no one of the injuries inflicted on this man would have killed him, but that all of the injuries inflicted were necessary to cause death."

Defendant Miller was a witness and testified that he was driving his Chrysler sedan south on Concord street close behind the street car after it passed Bircher street; that he had the headlights turned on and was driving at a speed of 20 to 25 miles per hour; that he intended to pass the street car as he was approaching Stanley street and was driving alongside the street car and three to four feet west of it; that he was looking ahead but saw no person in the street, but as he had passed the street car a foot or so, at Stanley street, he heard something strike against his car and the brakes of the street car screech, so he pulled to the curb of Concord street after passing Stanley street and went back to investigate.

A statement of decedent that he did not know what hit him, received in evidence as *res gestae,* throws no blame upon the motorman. No other person than the motorman saw decedent at the time he was struck. There is ample testimony from passengers on the street car corroborating the motorman, that he had received a signal to stop to let someone off at Stanley street, that the street car was slowing down, and stopped so suddenly as to throw the passengers forward in their seats. It must be taken as established facts that the motorman saw decedent and noticed that he wanted to board the street car and that, as the street car approached, he

backed away from the track so as to be out of danger from the street car; that the street car did not strike him, but that Miller's car struck and hurled him upon the track in front of the moving street car; and that the motorman the instant he saw decedent so thrown stopped the car as quickly as it could be done. With knowledge that decedent saw the street car and moved to let it pass, there is no room for finding a proximate cause of his death in the failure to sound the whistle or gong of the car. The motorman was not required to anticipate that a negligent motorist would pitch decedent from a safe position onto the street car track. Winchell v. St. Paul City Ry. Co. 86 Minn. 445, 90 N. W. 1050. When decedent's peril appeared, all of the motorman's efforts went to stop his car. He did this so quickly that it not only demonstrates his freedom from negligence in that regard but also that there was no negligence with respect to speed; for if at that time the speed had been upward of 20 miles an hour the street car would not have stopped where it did.

The only other claim of negligence is that the motorman failed to ascertain that Miller was in the act of passing the street car when decedent's position was seen. As long as the street car was moving forward it was the motorman's duty to keep a vigilant lookout for vehicles and persons who might get in the pathway of the street car. He could not attend to this duty and keep a lookout to the rear to see whom speeding vehicles might threaten. Plaintiff calls attention to the mirror in the motorman's cab, by which, if he turns his eyes to the right, he can see the rear gates. Of course this is for use when the street car has stopped or is coming to a stop so that he can see whether passengers have safely passed through the gates, and is not for the purpose of discovering oncoming motorists. It is also suggested that the reflection from the headlights of Miller's car would warn the motorman of its approach. There is little in the suggestion, in view of Miller's testimony that he could not see a person in front of those headlights unless within 20 feet of the car. The motorman's testimony is positive that he was not aware of the presence of Miller's car until it hit decedent. It is true that the jury were the exclusive judges of the credibility

of his testimony. But if his testimony is not accepted, there is nothing substantial in the record from which the jury could infer that he had such knowledge. There is nothing inherently incredible in his testimony, and no surrounding circumstances cast suspicion thereon. The little conflict there is between the witnesses as to whether the street car stopped before reaching the north curb of Stanley street or passed it a few feet can furnish no inference of the motorman's negligence. No measurements were made. The record appears to us wholly barren of any proof of negligence of the appellant's motorman which caused or contributed to cause decedent's death.

On the contentions in respect to the negligence alleged, plaintiff's counsel calls attention to Walker v. St. Paul City Ry. Co. 81 Minn. 404, 84 N. W. 222, 51 L. R. A. 632; Curran v. St. Paul City Ry. Co. 100 Minn. 58, 110 N. W. 259; Draves v. Minneapolis & St. P. S. R. Co. 142 Minn. 321, 172 N. W. 128, in all of which the street car struck persons who attempted to cross its track and whose movements and position were observable to the motorman if he kept a proper lookout ahead of his car. In some of those cases the situation was such that the jury could have found that the sounding of a warning might have averted the injury and that there was time to give it after the person's peril became apparent to the motorman. The failure to warn by whistle or gong has also been considered evidence of negligence where children happen to come in the pathway of a street car or locomotive, as in Pickell v. St. Paul City Ry. Co. 120 Minn. 340, 139 N. W. 616; Howell v. G. N. Ry. Co. 125 Minn. 137, 145 N. W. 804. Nor was the situation here with reference to congestion of people such as to require slow speed as in Hughes v. Minneapolis St. Ry. Co. 146 Minn. 268, 178 N. W. 605.

Appellant claims that the principle applied in Frye v. City of Detroit, 256 Mich. 466, 239 N. W. 886, requires that judgment be ordered in its favor. There, as here, an automobile struck and threw the plaintiff's decedent upon the city's street car track; but this took place some little time before the street car came up to where he lay. There the evidence would have justified finding

negligence on the part of the motorman in failing to discover the plaintiff's decedent in time to avoid striking him. The court held that the street railway and the autoist were not joint tortfeasors so as to render the city railway liable for the autoist's negligence; and, since the evidence failed to show that the death was caused from the injuries inflicted by the street car, the directed verdict for the city was proper. We need not adopt nor attempt to apply the principle here, for we are clear that the evidence does not warrant or support a finding that there was negligence in the operation or control of the street car which contacted with decedent. If there had been, we would have been inclined to follow this rule stated in Shearman & Redfield, Negligence (6 ed.) § 122:

"Concurrent, as distinguished from joint negligence, arises where the injury is proximately caused by the concurrent wrongful acts or omissions of two or more persons acting independently. That the negligence of another person than the defendant contributes, concurs or coöperates to produce the injury is of no consequence. Both are ordinarily liable. And unless the damage caused by each is clearly separable, permitting the distinct assignment of responsibility to each, each is liable for the entire damage. The degree of culpability is immaterial." See also Snider v. Sand Springs Ry. Co. (C. C. A.) 62 F. (2d) 635.

We realize that appellant cannot complain because of any error resulting in an unjust verdict in favor of Miller. Merrill v. St. Paul City Ry. Co. 170 Minn. 332, 212 N. W. 533. However, this verdict in favor of Miller and against appellant is so inexplicable when the evidence is considered as to destroy all confidence in its integrity. We think plaintiff was entitled to an instruction that Miller was negligent as a matter of law in driving past the street car at what he knew to be a stopping place for taking on and letting off passengers at the speed he testified to driving when his lights did not reveal persons ahead until his car was within 20 feet of them. The verdict in favor of Miller may be explained only on the assumption that decedent was found guilty of contributory negligence. If that assumption be correct, the evidence suggests no rea-

son why such contributory negligence should not likewise have compelled a verdict in favor of appellant. But, as already stated, since there is no evidence from which the jury could find that the death of plaintiff's decedent was caused or contributed to by any negligent act or omission of the motorman operating the street car which came in contact with decedent when he was thrown in front thereof by defendant Miller's automobile, the learned court erred when appellant was refused a directed verdict and judgment notwithstanding the verdict.

The order denying judgment *non obstante* is reversed and the cause is remanded with direction to render judgment in favor of appellant notwithstanding the verdict.